(Decided June 28th, 1860.)

---

OTHO H. WILLIAMS, survivor of JOHN B. HOWELL, *vs.* HIRAM C. WOODS, Jr., and JOHN C. BRIDGES.

A *broker* having made a contract of sale may authorize his *clerk* to make and sign an entry or memorandum thereof, under the broker's direction and in his presence, so as to bind the parties named in the contract.

A broker's clerk may reduce the contract to writing and sign the same where he exercises no discretion, but merely acts *ministerially*, or *mechanically* under the direction and supervision of his employer, the broker.

An agent may perform a mere ministerial or mechanical act by a sub-agent or deputy, even where he cannot delegate any portion of his authority requiring the exercise of the least discretion.

As a general rule, written instruments are to be construed by the court alone according to the meaning of the language therein employed, without the aid of parol proof to explain the meaning and intention of the parties thereto.

But in a mercantile transaction, where the terms of a written instrument are technical or equivocal on its face, or are made so by reference to extraneous circumstances, parol evidence of the usage and practice in the trade, is admissible to explain their meaning.

In such case the evidence of usage and surrounding circumstances, is *for the jury*, and the province of *the court* is to instruct them conditionally or hypothetically, what should be the proper construction or interpreta-

tion of the instrument, as they may find the evidence to support or not the purpose for which it has been offered.

An instruction was granted, to the effect, that a certain entry is a sufficient memorandum in writing of a contract to bind the defendant, *provided*, the jury find that it "either expressly or according to the sense and signification of its language and figures, under the established usage and custom of merchants in the city of Baltimore, at the time, &c., represented truly and fully the terms of, and parties to, the contract of sale." HELD:

That this instruction was erroneous, because it authorized *the jury to construe the entry*, or memorandum, without any absolute or conditional construction thereof by the court.

The presumption of law, in the absence of evidence to the contrary, is, that a *sold note*, or *memorandum* of sale, executed and delivered to a purchaser, was so executed and delivered *on the day on which it bears date*.

The memorandum of a sale of a lot of coffee, showed on its face that *no time* for the payment of the price was stated therein, but the plaintiff had offered uncontradicted evidence tending to prove that by mercantile usage the credit on a sale of coffee is six months, where there is no stipulation to the contrary. HELD:

That a prayer, by the defendant, to the effect that this entry was insufficient, if the jury find that the contract made was a sale on a credit of six months, is erroneous and was properly rejected, because it ignores this proof of usage, the truth of which the court was bound to assume when deciding upon the prayer.

An entry of a sale of coffee not stating any credit, is not an insufficient note, or memorandum, for want of a proper, or any specification of the length of credit, when, by mercantile usage, such a sale is a sale on six months' credit; the entry, in connection with the usage, is an entry of a sale with six months' credit.

A sold note, or memorandum of sale, made out and delivered to the purchaser, by the *broker*, *after* the vendor had refused to ratify the sale, and after express notice of such refusal had been given, both to the broker and purchaser, is not a sufficient note or memorandum of the bargain to bind the vendor.

Where a broker has authority to make an absolute sale, not subject to the approval of the vendor, (his principal,) and within the scope of such authority, makes such a sale, it is valid, whether the broker was influenced in making it by the approbation of the vendor's clerk or not, or whether the sale was afterwards objected to by the vendor or not.

A bargain for the sale of coffee, upon the terms, that the paper therefor should be satisfactory to the seller, is not sufficiently evidenced, under the Statute of Frauds, by a note or memorandum which does not mention whether the paper for the price should be satisfactory to the seller or not.

When the evidence relied on, to sustain the facts which are the basis of a prayer, is in conflict, or inconsistent, with other evidence offered by the opposite party, in relation to the same facts, the prayer should not be refused merely because it does not mention or notice the opposing or conflicting evidence.

Where there is conflicting, or inconsistent, evidence, in relation to the same matter, either party has the right to ask the court to instruct the jury what should be the legal effect of their finding that the facts which are made the groundwork of his prayer are true.

In an action, by the purchaser, to recover damages for the non-performance, by the vendor, of a contract for the sale of a lot of coffee, there was no proof that the coffee was to be paid for, either by satisfactory paper or by cash, on any particular day, or at any specified period of time. There was no delivery, or offer of delivery, by the vendor, but, on the contrary, he very promptly, after being informed of the sale, refused to comply with the bargain. HELD:

That the plaintiff was not bound to prove, at the trial, in order to entitle him to a verdict, that at, or before the time of suit brought, he had in his possession, or under his control, sufficient money or a sufficient amount of paper satisfactory to the seller, to cover the price of the coffee, ready to be handed over to the vendor simultaneously with the delivery of the coffee.

In an action for not delivering goods, where no time is fixed for the completion of the contract, the damages must be calculated from the period at which the defendant refuses to perform it; such refusal leaves no *locus penitentiæ* to the defendant, and the plaintiff cannot treat the agreement as any longer subsisting.

Where, in an action for the non-delivery of a lot of coffee, the defendant refused, on a certain day, to ratify the sale and deliver the coffee, and the plaintiff at that time had not paid, or offered to pay, any part of the price, such refusal constitutes a breach of the contract at that time, and the measure of damages is the difference, if any, between the price of a lot of coffee, of the same quality and quantity, at the time of such breach, and the price at which the same had been sold.

APPEAL from the Superior Court of Baltimore City.

*Assumpsit,* brought on the 10th of September 1853, by the appellees, partners, trading as Woods, Bridges & Co., against the appellant and John B. Howell, trading as William Howell & Son, to recover damages for non-compliance with an alleged contract for the sale of a lot of coffee, part of the cargo of a vessel called the "Clintonia Wright."

The declaration contains five special counts. The *first*

alleges that the defendants, on the 26th of August 1853, bargained and sold to the plaintiffs 1244 bags of coffee, containing 200,000 pounds, at 9¾ cents per pound, to be delivered immediately thereafter, and to be paid for by the plaintiffs to the defendants in promissory notes or bills of exchange satisfactory to the defendants, and payable in six months after the date of said delivery—averment, that the plaintiffs have always been ready and willing to accept the goods and pay for the same at the price and in the way aforesaid, of which the defendants had notice—breach, refusal and neglect to deliver. The *second* count alleges that the coffee was to be delivered at any time the plaintiffs might request or demand, to be paid for in notes, &c., payable six months after the 26th of August 1853. The *third* count alleges that the coffee was Rio coffee, to be delivered within a reasonable time thereafter, to be paid for in notes, &c., payable six months after the 26th of August 1853. The *fourth* count alleges that the coffee was to be delivered in a reasonable time thereafter, to be paid for by the plaintiffs on the delivery thereof. The *fifth* count alleges that the coffee was to be delivered within a reasonable time thereafter, and to be paid for six months after the 26th of August 1853.

Plea, *non assumpsit*.

Subsequently Howell's death was suggested, and the case was prosecuted against the appellant, Williams, as surviving defendant.

*Exception.* The evidence on both sides is very voluminous, and need not be stated at length. Its purport sufficiently appears from the arguments of counsel, the opinion of this court, and the following prayers, on both sides, which are given in full.

The plaintiffs offered the five following prayers:

1st. If the jury shall find, from the evidence, that the witnesses, White and Elder, during all the months of August and September 1853, were engaged as partners in Baltimore, under the firm of White & Elder, in the business of merchandise brokers, and sellers of merchandise on commission, and that on the 26th of August 1853, the said firm of White & Elder

had authority from William Howell & Son to sell for them the coffee mentioned in the declaration, at a certain price, and upon certain terms, and did, in fact, on said 26th day of August, in pursuance and execution of their said authority, and within the scope thereof, contract, on behalf of said William Howell & Son, with the plaintiffs, to sell them the said coffee, at the price and upon the terms for and upon which said White & Elder were as aforesaid authorized to sell it, by said William Howell & Son. And if the jury shall further find that the book, produced in evidence by the witness White, was the sales book of White and Elder, at the time of said contract, wherein they made or caused to be made, entries of all sales made by them, as brokers and sellers of merchandise as aforesaid, and that the entry therein, on page 251 of said book, [this entry is set out in the opinion of this court,] with the exception of the words "paper to be satisfactory to the sellers," and the figures "$9\frac{3}{4}$" and "1244," was made therein, on August 26th, 1853, by Richard W. Hall, then a clerk of White & Elder, by the order, in the presence and under the actual personal direction and supervision of said White, acting for his said firm, as and for a partial note or memorandum of the said contract of sale to the plaintiffs, by William Howell & Son, through White & Elder, and that the words and figures, excepted above, were added by the said White himself, acting for his said firm, in his own handwriting, to complete the memorandum or note of said contract, on said 26th day of August 1853, or before any revocation (if the jury shall find any such) by William. Howell & Son, of their authority aforesaid to White & Elder; then the said entry is a sufficient note or memorandum in writing of a contract to bind the defendant in this action; provided, the jury shall further find that said entry, either expressly or according to the sense and signification of its language and figures, under the established custom and usage of merchants in the city of Baltimore, at the time, (if the jury shall find such custom and usage,) and under the other proof in the cause, represented truly and fully the terms of and parties to the contract of sale, entered into as aforesaid by White & Elder for William Howell & Son, and under their

authority, (if the jury shall so find,) with the plaintiffs; and *provided* the jury shall further find that John B. Howell and the defendant then constituted the firm of William Howell & Son, and that said Howell hath since died.

2nd. If the jury shall find, from the evidence, the facts set forth in the plaintiffs' first prayer, and shall further find that the witness Murgiondo, during all the month of August 1853, was a clerk of William Howell & Son, and was authorized and empowered by William Howell & Son, to make and confirm a sale, or accept an offer for the purchase of the coffee in question, at $9\frac{3}{4}$ cents per pound, on a credit of six months, for satisfactory paper, and, being so authorized and empowered, did receive from White & Elder, on the 25th of August 1853, either an offer on the part of the plaintiffs, and made by their authority, to purchase said coffee, at the price and on the terms aforesaid, or a report of an actual sale already made by said White & Elder, for William Howell & Son, to the plaintiffs, at the price and on the terms aforesaid. And if the jury shall further find that the said Murgiondo did either accept said offer, (if the jury find it was an offer,) or confirm said sale, (if the jury find that White & Elder reported a sale, as aforesaid,) and that he acted within the scope of his authority in so doing, and did accordingly, on the said 25th of August 1853, make in the blotter of William Howell & Son, (if the jury so find,) the entry following:—"Woods, Bridges & Co. Aug. 25th, 1853—6 mos.—Ed. C. Wright.—1244 bags of coffee—*a*. $9\frac{3}{4}$," in his own handwriting, as and for a note or memorandum, in writing, of the offer so made to him and by him accepted as aforesaid, or as a note or memorandum, in writing, of the sale so as aforesaid to him reported, and by him confirmed as aforesaid (according as the jury may as aforesaid find,) and did further, on August 26th, 1853, write, sign, and transmit to the defendant, as a member of, and for the firm of, William Howell & Son, the letter of that date, purporting to be signed by said Murgiondo, and produced in evidence by the defendant, [in this letter the writers says: "I beg to advise sale about 1500 bags coffee by C. Wright to Woods, Bridges & Co., *a*. $9\frac{3}{4}$ *c*., 6 mos. I hope that said

sale will prove to your satisfaction, say lots 1 *a.* 24, leaving only four numbers more of said cargo in B. & Pearson's hands. Elder & White tell me that they, the purchasers, will make all right even in case you should not wish to take their note for the whole am't,''] and that said Williams received the same, and did, on the 29th day of August 1853, write, sign, and caused to be telegraphed, in reply to the said Murgiondo, a note or dispatch, of which the jury shall find that the writing following:—"Newport, Aug. 29th, 1853. To Williams, Howell & Son.—Do not deliver the coffee—sale not satisfactory.—Otho,"—produced by the defendant, is a copy, and that said Williams did sign the same in the name "Otho," as and for his own name, and for and on behalf of William Howell & Son; then said entry, letter and note or dispatch, taken together, constitute a sufficient note or memorandum, in writing, to bind the bargain as against the defendant in this action; *provided,* the jury shall believe that, either in express words or according to the interpretation and meaning given and attached to the language therein used, at the time, by the usage and custom of merchants in the city of Baltimore, (if the jury find such interpretation, meaning, usage and custom,) and from the other proof in the cause, the said entry, letter, and note or dispatch, together, truly and fully set forth the terms of and parties to the contract, which the jury may find as aforesaid to have been entered into, accepted, or confirmed, by said Murgiondo, for William Howell & Son, with, from or to the plaintiffs, through White & Elder, as aforesaid.

3rd. If the jury shall find the facts set forth in the first and second prayers of the plaintiffs, then there is evidence from which the jury may find a sale from William Howell & Son, on the 25th day of August 1853, to the plaintiffs, of the coffee in question, and a sufficient note or memorandum thereof, in writing, to bind the bargain as against the defendant in this action.

4th. If the jury find the facts set forth in the first and second prayers of the plaintiffs, and further find that the witness, White, as a member of, and for the firm of, White &

Elder, did write, sign and deliver to the plaintiffs, on the 26th of August 1853, or before the revocation of the authority of William Howell & Son to White & Elder, mentioned in the plaintiffs' first prayer, (if the jury find such revocation,) the paper following:—"Sold Messrs. Woods, Bridges & Co., for acc't of Wm. Howell & Son, $\frac{C}{W}$ 1244 bags Rio coffee, at $9\frac{2}{3}$, 6 mo., 1—26, 2—42, 3—27, 4—62, 5—24, 6—70, 7—60, 8—58, 9—72, 10—85, 11—38, 12—39, 13—43, 14—68, 15—101, 16—30, 17—95, 18—34, 19—26, 20—60, 21—52, 22—16, 23—56, 24—60. *Baltimore, August* 26th, 1853. (Signed,)— *White & Elder*,"—as and for a memorandum or note of the sale by White & Elder, made to the plaintiffs for William Howell & Son, and mentioned in plaintiffs' first prayer; then such paper is a sufficient note or memorandum, in writing, to bind the bargain as against the defendant in this action; *provided*, the jury shall find that it contains and sets forth, either expressly or in words sufficient and competent therefor, under the usage and custom of merchants, at the time, in the city of Baltimore, (if the jury find such usage and custom,) and under the other proof in the case, the terms of the sale so as aforesaid made by White & Elder to the plaintiffs, and in said first prayer mentioned.

5th. That if the jury find, from the evidence, the execution and delivery to the plaintiffs, by White & Elder, of the memorandum in writing, purporting to be signed by them, and set forth in the plaintiffs' fourth prayer, the presumption of law, in the absence of evidence to the contrary, is, that the said paper was so executed and delivered on the day on which the jury may find that it bears date.

The defendant then offered the following prayers:

1st. If the jury shall find, from the evidence in the cause, that the entry in the memorandum book, offered in evidence by the plaintiffs, as the memorandum book of Messrs. White & Elder, under the date of the 26th day of August 1853, as follows: [this is the entry set out in the opinion of this court,] was made and written (except as to the words "paper to be satisfactory to the sellers," and except as to the figures "1244," and except as to the figures "$9\frac{3}{4}$,") by Richard W. Hall, and

that said Hall, at the time said entry was made and written, (in case the jury shall find that the same was written by said Hall,) was a mere clerk of said White & Elder, and not interested in their partnership or in their business; and shall further find, from the evidence, that said Hall was not engaged in business at that time as a broker, and that he had not been authorised or requested to make any sale or sales, for or on account of the firm of William Howell & Son, either by said firm or by any member of said firm; and shall further find, from the evidence in the cause, that no part of said memorandum is in the handwriting of Mr. Elder, one of the firm of White & Elder, and that no part thereof is in the handwriting of Mr. White, one of said firm of White & Elder, except the words "paper to be satisfactory to the sellers," and the figures "1244," and the figures "9¾;" and shall further find, from the evidence in the cause, that a bargain was actually made between the said Mr. White, as one of the firm of White and Elder, and the plaintiffs, in relation to 1244 bags of 'coffee, belonging to the said Wm. Howell & Son, and that in making such bargain, the said Mr. White professed to act as representing his said firm, as broker for said William Howell & Son, and that the terms of such bargain as made, were, that there should be a credit of six months for payment of the price, and that the said price should be settled for by paper satisfactory to said firm of William Howell & Son, or else in cash at the usual discount; and shall further find that no part of said price was paid by the plaintiffs, or on their behalf, and that no part of said coffee was delivered to the plaintiffs, then the said memorandum is not a sufficient note or memorandum of the said bargain to bind the said firm of William Howell & Son, or the defendant, as surviving partner of said firm.

2nd. If the jury shall find the facts set forth in the first prayer of the defendant, as the hypothesis of that prayer, and shall further find, from the evidence in the cause, that the paper signed White & Elder, and dated the 26th of August 1853, and in the following words: [this paper is set out in the plaintiffs' fourth prayer,] was written by the witness, Mr.

White, on or after the 5th day of September 1853, and was delivered to the plaintiffs on or after that date, and not before; and shall further find, from the evidence, that on the 29th day of August 1853, the following telegraphic dispatch was received at Baltimore, by the witness, Murgiondo, from the defendant, Mr. Williams, and that Mr. Williams was then at Newport, Rhode Island, [this dispatch is set out in the plaintiffs' second prayer;] and shall further find that said dispatch was communicated on the day of its receipt, and shortly after its receipt, to Mr. Elder, one of the firm of White & Elder, and that the said Elder knew and understood that the said telegraphic dispatch was a communication from the defendant, and that said dispatch relates to the said 1244 bags of coffee, and that said Elder, on reading over said telegraphic dispatch, replied that it was all right, or in words to that effect, and that no communication was made to the said firm, or to the said Mr. Murgiondo, or to any agent of the said firm of Wm. Howell & Son, by the said Mr. Elder, or by the said firm of White & Elder, or by the plaintiffs, prior to the 31st day of August 1853, that the refusal of said defendant was not right, or that it was not assented to by the said plaintiffs; and shall further find that, on the 31st day of August 1853, the said defendant had returned to Baltimore, and, on said last mentioned day, informed said Elder, and also informed the said plaintiffs, that he did not approve the said bargain, and that he objected to both the price and the paper; and shall further find that the said memorandum, recited in this paper, was made out and signed by said White & Elder, at the request of the plaintiffs, and that express notice of the refusal on the part of the said William Howell & Son, to approve or comply with said bargain, (in case the jury shall find there was such refusal,) had then been given as well to the said White & Elder as to the said plaintiffs, then the said paper above recited in this prayer, is not a sufficient note or memorandum of said bargain, (in case the jury shall find such bargain was made,) to bind the said firm of Wm. Howell & Son or the defendant.

3rd. If the jury shall find the facts set forth in the defendant's first prayer, as the hypothesis of that prayer, and shall further find, from the evidence in the cause, that said Mr. White called, on the 26th day of August 1853, and before he made any conclusive bargain with the plaintiffs, at the counting-room of William Howell & Son, in the city of Baltimore, for the purpose of reporting to said firm of William Howell & Son, an offer for 1244 bags of coffee, at the price of 9¾ cents per pound, at six months' credit, and that in so calling, the said Mr. White, intended to be governed by such answer as he might receive from said firm in relation to said offer, and either to accept or reject said offer, as the said firm, in the exercise of its discretion and judgment, might elect and direct; and shall further find that such interview then took place at the counting-room of the said William Howell & Son, between said Mr. White and the witness, Mr. Murgiondo, and that afterwards, and on the basis of authority given, or supposed by him to have been given, in such interview, by the said Mr. Murgiondo, the said Mr. White made the bargain, with the plaintiffs, for the sale of the said 1244 bags of coffee, (in case the jury shall find that such bargain was made,) and shall further find that said Mr. White would not have made such bargain, with the said plaintiffs, without having previously reported the offer to the said firm of William Howell & Son, or to one of the members of said firm of William Howell & Son, but for the authority given, or supposed to have been given, by said Murgiondo, in such interview as aforesaid; and if the jury shall further find that said Mr. Murgiondo, in such interview, did not represent himself to have any authority to act definitely, by accepting said offer without the approval of the said firm, or, (in case the jury shall find, from the evidence, that the said Mr. Murgiondo did represent himself to have the authority to act definitely, without the previous approval of said firm,) if the jury shall find that he had in fact no such authority; and shall further find that said Murgiondo, without any unnecessary delay, did communicate to the said firm of William Howell & Son, the fact that a sale had been made subject to

Williams, surviving partner of Howell, *vs.* Woods, Bridges & Co.

their approval, and that the said firm promptly and without unnecessary delay, rejected the same, then the bargain made with the plaintiffs, by said White & Elder, (in case the jury shall find the facts aforesaid,) was not a bargain binding on the said firm of William Howell & Son, or on the defendant.

4th. If the jury shall find the facts set forth in the second prayer of the defendant, as the hypothesis of that prayer, and shall further find, from the evidence in the cause, that a bargain was made by Mr. White, as one of the firm of White & Elder, with the plaintiffs, for the sale of 1244 bags of coffee, belonging to the firm of William Howell & Son, at the price of $9\frac{3}{4}$ cents per pound, at six months' credit, on the terms that the paper therefor should be made satisfactory to the seller; and shall further find that, by the usage and custom of merchants in the city of Baltimore, a sale of coffee on credit, without any stipulations as to the paper to be given therefor, means that the paper of the purchaser will be received for the price of the coffee, and that in such case the seller would not be entitled to demand paper of other parties, or to require any thing more than the mere paper of the purchasers, and that by the usage and custom of merchants in the city of Baltimore, a sale of coffee on credit, on the terms that the paper shall be made satisfactory to the seller, means that the seller has an absolute and unqualified right to judge for himself as to the satisfactoriness of the paper, and cannot be required to accept any paper except such as the seller may actually agree to accept for the price, then the said memorandum, mentioned in the defendant's second prayer, is not a sufficient or true memorandum of such bargain, in case the jury shall find, from the evidence, that such bargain was made on the terms that the paper should be made satisfactory to the seller.

5th. That the plaintiffs are not entitled to a verdict upon the issues joined in this case, unless the jury shall find, from the evidence in the cause, that the plaintiffs, at or before the time of bringing this suit, had actually in their possession, or under their control, a sufficient amount of paper, satisfactory

to the said William Howell & Son, to cover the price of said coffee, or satisfactory to the defendant, ready to be handed to the said William Howell & Son, simultaneously with the delivery of the said coffee to the plaintiffs, or had in their possession, or under their control, money sufficient in amount to cover the price of the said coffee, less the usual discount in case of a payment in cash.

6th. If the jury shall find, from the evidence in the cause, that the said William Howell & Son did sell, to the plaintiffs, on the 26th of August 1853, 1244 bags of coffee, in manner and on the terms as testified to by the witness, Mr. White; and shall also find, from the evidence, that the said William Howell & Son, immediately, upon being informed of said sale, (in case the jury shall find said sale,) refused to recognize the same as valid and binding on them; and shall also find that, on the 31st day of August 1853, the said firm of William Howell & Son had an interview with the plaintiffs, on said last mentioned day, in the city of Baltimore, and that in such interview, (in case the jury shall find such interview,) positively and expressly refused to ratify or comply with said sale, and then and there, distinctly and expressly, refused to deliver said coffee; and if the jury shall also find that the plaintiffs knew and understood that the said William Howell & Son refused to ratify said sale, and refused to deliver said coffee, (in case the jury shall find such refusal,) then such refusal, on the part of said William Howell & Son, if found by the jury, constituted a breach of the contract of said sale, (in case the jury shall find such sale,) on the said 31st day of August 1853; and if the jury shall further find, from the evidence in the cause, that the said plaintiffs, at the time of such breach, (in case the jury shall find such breach,) had not paid the price, or any part of the price, of said coffee, and had not delivered, or tendered, notes satisfactory to the said William Howell & Son, for the price, or any part of the price, of said coffee, then the measure of damages, in case the jury shall find for the plaintiffs upon the issues joined in this case, is the difference, if any, between the price of a lot of coffee, of the same

Williams, surviving partner of Howell, *vs.* Woods, Bridges & Co.

quality and quantity, at the time of such breach, and the price at which the same had been sold, in case the jury shall find such sale, and such interest thereon as the jury may think right; and if the jury shall not find, from the evidence in the cause, that the price, at the time of such breach, (in case the jury find such breach,) had increased beyond the price at which the same had been sold, in case the jury shall find such sale, then the jury, in case they shall find for the plaintiffs, shall find their verdict merely for nominal damages.

The court (LEE, J.) granted all the prayers of the plaintiffs except the *first* and *fourth*, which it rejected as offered, but modified the said *first* prayer by substituting the word "*a*" for the words "the said" before the word "contract," in the paragraph next to the last in said prayer, and by adding to the *fourth* prayer the following proviso: "*Provided*, also, the jury find all the other facts in the cause, going to show the authority of the agents, White & Elder, and the usage of the particular trade governing such a sale, as stated in the first and second prayers of the plaintiffs;" and granted the instructions so modified, and rejected all the prayers of the defendant.

In disposing of the prayers, the court made use of the expressions following to the jury, which were reduced to writing by the defendant's counsel at the time, and corrected by the plaintiffs' counsel as here inserted, but in regard to which the court afterwards said, that all the instructions on the law which it meant to give to the jury were contained in the plaintiffs' prayers as granted and modified.

1st. The entry in the book, "paper to be satisfactory," &c., is to be presumed to have been made by Mr. White on the 26th of August—the defendant being at liberty to show, from the evidence, that it was made afterwards.

2nd. That under the phrase, "paper to be satisfactory," &c., it is competent for the plaintiffs to show that it imports that the paper was to be on a credit of six months from the sale, if the evidence shows that, by the usage of trade, coffee was sold on a credit of six months, and that the words quoted, under such usage, import that credit.

·3rd. That the entry in the book of White & Elder and the said note, in connection with the entry in the book of William Howell & Son, and Mr. Murgiondo's letter of the 26th of August, may show a sufficient memorandum of the contract within the Statute of Frauds, if the jury find that they contain the names of parties and terms of sale.

4th. That the entry in the books of William Howell & Son, made by Mr. Murgiondo, may be evidence of the correctness of said note, if the jury find that the entry explains and corroborates the said note, in accordance with what they may find to have been the terms of the contract.

5th. That if the jury shall find that, by the usage of trade, or otherwise, under the evidence, the coffee was to be delivered in a reasonable time, then the jury may, in forming their estimate of damages, in case they shall find for the plaintiffs, look to the rise in coffee, even beyond the period when the defendants revoked the authority of White & Elder, even if they find said authority was revoked on the 31st of August 1853, and even if they shall find, from the evidence, that the defendants, expressly and positively, refused to recognize the contract as binding on them, or to deliver the coffee, on the said 31st day of August 1853, provided said period of reasonable time be extended beyond said 31st day of August 1853.

The defendant excepted to the granting of each of the several prayers of the plaintiffs as offered and modified, and to the refusal of the court to grant each of the several prayers of the defendant, and to the several additional expressions or declarations of the court to the jury, while delivering its opinion on the prayers. The verdict and judgment were in favor of the plaintiffs, for $3065.83 damages with interest and costs, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Wm. Schley,* for the appellant:

1st. The memorandum in the sales-book, or blotter, of White

& Elder, offered in evidence by the plaintiffs, was not a sufficient note or memorandum to bind the defendant, if the jury should find the facts set forth in the defendant's first prayer. It did not prove the allegation of the plaintiffs that the defendant had bargained and sold the coffee, for the non-delivery of which this suit was brought. In arguing this point he insisted upon and discussed the following propositions:

1st. The name of William Howell & Son, being written, not by either of the brokers, but by Mr. Hall, *their clerk*, is not signed by a person duly authorized as required by the *Statute of Frauds. Roberts on Statute of Frauds, sec.* 369. He said, that by the words of the *Statute*, the *broker* was the only party authorized to sign the name in this case—the Statute expressly so enacts—the *party*, or *his agent*, must sign, and the *agent* of the *agent* cannot do it. A party having a trust or power to execute must do it himself—he cannot delegate his authority—*potestas delegata non delegari potest.* 1 *Parson's on Cont.*, 71, 72. *Story on Agency, secs.* 13, 109. He further cited on this proposition: 1 *Younge & Jervis*, 387, *Henderson vs. Barnewall;* 30 *Eng. C. L. Rep.*, 392, 394, *Gosbell vs. Archer;* 9 *Ves.*, 251, *Coles vs. Trecothick;* 1 *Jac. & Walk.*, 169, *Burnell vs. Brown;* 3 *Merivale*, 237, 246, *Blore vs. Sutton;* 1 *Md. Rep.*, 435, *Ijams vs. Hoffman.* He further said that the cases of *Lord St. John vs. Boughton*, 9 *Simons*, 219, and *Smith vs. Jones*, 7 *Leigh*, 165, cited by the appellee's counsel, were different from the present and could not control its decision; that the former was a case simply of a signing by an agent and not by the agent of an agent, and the latter the case of the clerk of an auctioneer, who acts openly at the sale as the agent of both parties.

2nd. The memorandum is not *signed* at all by the defendant, by the plaintiffs, or by the brokers. A sufficient memorandum ought to show, not merely *the parties* to the contract, the *subject-matter*, the *price* and *terms*, but ought to show, *ex-facie*, that it was *signed* by the party to be charged, or by some agent thereunto properly authorized. 15 *Pick.*, 307, *Brewster vs. Hobatt.*

3rd. The memorandum, as *originally* made, left out many

material and essential terms of the bargain as proved. It did not show whether the price was to be paid *in cash,* or on *credit,* or what *length* of credit, and whether on *security* or how. It did not say whether delivery was to be made *before* payment or after payment, or when, nor the quantity of coffee sold. It did not show that *the paper was to be made satisfactory* to the vendors, as proved by Mr. White. Now a sufficient memorandum must show *all* terms and conditions without resort to parol proof. *Story on Sales, secs.* 269, 271. 11 *East.,* 142, *Boydell vs. Drummond.* 9 *Eng. C. L. Rep.,* 286, *Kenworthy vs. Schofield.* 13 *Mees. & Wels.,* 743, *Pitts vs. Beckett.* 26 *Wend.,* 341, *Davis vs. Shields.*

4th. The additions made to the memorandum, by Mr. White, at a subsequent period, (and there was evidence from which it might have been found that they were made *many days* afterwards,) could not make it good. If not good, *ab initio,* it cannot be supplied. The entry must be contemporaneous. 1 *Duer.,* 132, *Galet vs. Cowdry.* 1 *Cal.,* 415, *Craig vs. Godfroy.*

2nd. But even if the memorandum was in form sufficient, the broker had no authority in fact to make it. 1st. Because if the evidence of Mr. Wright and Mr. Jenkins, as to usage, was accredited, the usage proved by them, limited the authority of the brokers to the mere office of middle-men, only authorized to contract subject to approval. They were bound to report the offer before acceptance. *Russell on Factors,* 453. 2nd. The authority of the brokers was limited in its duration. It was not merely *revocable* but was *temporary* in its character. The evidence of Mr. Wright, as to usage in this respect, is very decided. *Blackburn on Sales,* 115. 4 *Camp.,* 279, *Dickinson vs. Lilwall.* 2 *Eng. C. L. Rep.,* 325, *Dickenson vs. Lilwall.* 3rd. The additions made to the memorandum, (and without which it was unmeaning,) were made after the revocation of any authority to contract. There was evidence from which it might have been found by the jury, that the entry was not made until the 5th of September. 4th. But even if Mr. White had the authority, as broker, to make this mem-

orandum, (if he had intended to act on the basis of this authority,) yet there is evidence from which it could properly have been found that he did not really act on such basis, but acted in virtue of a supposed special authority.

3rd. There is no sufficient evidence of a *special* authority. The clerk of the defendant had no authority to bind the defendant, and of course could impart none to Mr. White. The evidence of Mr. White showed that he acted on the basis of the supposed confirmation of the sale by Murgiondo, and the latter proves that he had no authority and did not assume to have any.

4th. The *sold note*, or memorandum of sale given by Mr. White to the plaintiffs, does not conform to the actual agreement as proved. It omits the very essential condition, that "the paper was to be satisfactory to the sellers." Without the addition of this material condition, *the memorandum* would have been good for nothing, because of the variance between it and the real contract as proved. The *sold note* (according to the evidence of Mr. Jenkins, as to usage,) was for the paper of the appellees alone. *Story on Sales, secs.* 269, 271.

5th. This *sold note,* according to the recollection of Mr. White, was delivered *after* the revocation of his authority to sell.

6th. To maintain the suit, the plaintiffs must prove the averment, that they were *ready and willing* to give satisfactory paper. It was a case of concurrent conditions. 11 *G. & J.*, 445, *Oliver vs. Palmer*. 11 *Barb.*, 268, *Draper vs. Jones*. They must show not merely that they *could* have procured satisfactory paper, but that they *had* it. 2 *Bos. & Pull.*, 447, *Waterhouse vs. Skinner*. 2 *Hall,* ( *Y. N. Rep.)* 414, *White vs. Demilt*. 12 *Johns.*, 209, *Porter vs. Rose*. 5 *Cowen,* 404, *Topping vs. Root*.

7th. The damages in such a case are the damages at the time of the breach. The distinction between a case where the price has not been paid wholly or in part, and where payment has been made, is well established. *Sedgwick on Damages,* 93. 3 *Wheat.*, 200, *Shepherd vs. Hampton.*

3 *Mass.*, 390, *Gray vs. Portland Bank.* 3 *Cranch*, 298, *Douglass vs. McAllister.* 2 *Barn. & Cress.*, 624, *Gainsford vs. Carroll.* 8 *Taunt.*, 540, *Leigh vs. Paterson.* 2 *East.*, 211, *Shepherd vs. Johnson.* 2 *Taunt.*, 257, *McArthur vs. Lord Seaforth.* 7 *Cowen*, 681, *Clark vs. Pinney.* 1 *Md. Rep.*, 341, *Middlekauff vs. Smith.* 6 *H. & J.*, 300, *Cannell vs. McLean.* 9 *Gill*, 251, *Marshall vs. Haney*, and same case in 4 *Md. Rep.*, 498. 1 *H. & G.*, 464, *Williamson vs. Dillon.* 3 *Phillip's Ev.*, Note 299. 5 *Phillips' Ev.*, 193, in notes.

Applying the general principles above stated, the instructions given by the court cannot be sustained. Besides the general objections, there are special objections to all the prayers of the plaintiffs.

The first, as originally propounded, not only assumes that the entry might be validly made in part by the broker's clerk, and might be *subsequently* changed by the broker, by additions thereto, but affirms, *as matter of law*, that said note was a memorandum to bind the defendant, *without leaving it to the jury* to find, *as matter of fact*, whether said memorandum did or did not conform to the agreement actually made. The proviso was no doubt intended to avoid this objection, but the proviso leaves it to the jury to construe the sense and signification of the entry, (which, being in writing, was the office of the court,) and authorizes the jury to decide whether said entry, *as they may interpret its sense and signification*, correctly shows the parties to, and the terms of, the assumed contract with the plaintiffs. This prayer affirms that an entry made, in part, by the *clerk* of a broker, if made under the actual presence, direction and supervision of the broker, and subsequently completed by the broker himself, whether so completed on the same day, or on a subsequent day, if made before the revocation, by the principal, of the authority, is sufficient to bind the principal, if, in other respects, the memorandum complies with the statute; and it further affirms that, in order to show the sufficiency of the memorandum in other respects, *the jury* may find as a fact that the memorandum represents, truly and fully, the

terms of, and parties to, the contract, either expressly, that is, by its legal interpretation, or by the meaning of its language and figures, under an assumed established usage and custom of merchants in Baltimore. But it does not give the court's interpretation of the memorandum, considered *per se,* nor does it state the supposed custom and usage, nor does it ask the court to say that such supposed custom and usage is a valid one, nor does it leave it to the jury to find the existence of any custom, but really *assumes* the existence of an unexplained, assured, established custom. 10 *Md. Rep.,* 248, *Burroughs vs. Langley.* 7 *G. & J.,* 321, *Dorsey vs. Eagle.* 6 *Md. Rep.,* 37, *Foley & Woodside vs. Mason.*

The second prayer leaves it to the jury to find that Murgiondo was authorised and empowered by Wm. Howell & Son to accept an offer for the coffee in question, whereas there was no evidence from which the jury could properly find such authority. It leaves it to the jury to find that Murgiondo *acted* within the *scope of his authority* in accepting the offer, or in confirming the sale, whereas there is no evidence of the *existence* of any authority, much less of its *extent.* It moreover declares, that the entry by Murgiondo, the letter to Williams, and his telegram, constitute a sufficient memorandum of the sale, and leaves the jury to find the meaning of said documents, from usage and custom, whereas there was no proof of usage and custom in relation to the meaning of any of said documents.

The third prayer is compounded of the first and second, and is liable to the same exceptions.

The fourth makes the bought note a sufficient memorandum, notwithstanding the objections already stated, and the special objection that it was made *after* the revocation of the authority claimed to have been given to White & Elder. Besides, the provisos are very vague and indefinite, and calculated to mislead the jury—at least, to embarrass and confuse them in deciding the case.

The fifth assumes that it was necessary for the plaintiffs to establish, as a fact in the cause, that the bought note was actually written and delivered *before* the dissent of the defend-

ants, and before the revocation of the authority of White & Elder, if any existed; and, by granting the prayer, the court makes the act of a mere witness *prima facie* evidence against the defendants. Even if it might be presumed, from the date, that it was *written* on day of its date, on what principle can it be inferred that it was *delivered* on that day? The natural order is changed, and the *onus* is put on the defendants of disproving what the plaintiff ought to *prove* affirmatively.

It is not deemed necessary to refer to the prayers of the defendant, as they have already been sufficiently considered in discussing the several points above stated.

But the verbal instructions given by the judge to the jury, although stated as not meant, or intended to be given, as *additional* to the several instructions contained in the granted prayers, yet they were *explanatory* of the court's views and opinions, and even if counsel had been at liberty to argue to the contrary, (7 *G. & J.*, 341, *Sowerwein vs. Jones,*) yet they were well calculated to mislead and influence the jury, and to embarrass the defendant's counsel in argument.

*John H. Thomas* and *S. Teackle Wallis,* for the appellees, argued:

1st. That the entry in the sales-book of White & Elder, under the circumstances testified to by White, if it contained expressly or according to the mercantile interpretation of it, the terms of and parties to a contract of sale made by them, within the scope of their authority was a sufficient memorandum, under the Statute of Frauds, to bind their principals. *Story on Sales, sec.* 266. *Story on Cont., sec.* 786. *Story on Agency, sec.* 28. *Russell on Factors and Brokers,* 67. *Dunlap's Paley's Agency,* 176, note (*n,*) 315, note (*g.*) 6 *Eng. Law & Eq. Rep.,* 299, *Sivewright vs. Archibald.* 1 *Younge & Jervis,* 395, *Henderson vs. Barnewall.* 12 *Johns.,* 105, *Merritt vs. Clason.* 14 *Johns.,* 484, *Clason vs. Bailey.* 26 *Wend.,* 341, *Davis vs. Shields.* The appearance of the name of the party to be bound, in any

part of the paper is a sufficient signature. 5 *H. & J.*, 117, *Batturs vs. Sellers*. 1 *H. & G.*, 152, *Higdon vs. Thomas*. The validity of the memorandum is not affected by the fact that it was made partly by Hall. White & Elder made the contract and did every thing requiring the exercise of judgment or discretion. They entrusted to him nothing but a mere mechanical duty, and that was performed under White's immediate supervision, who completed the memorandum, by adding thereto the material part, which contained the price and terms of sale. *Parsons' Mercantile Law*, 155, *note* 7. *Dunlap's Paley's Agency*, 176. 1 *Amer. Lead. Cases*, 589. 2 *Cox's Ch. Cases*, 84, *Ex-parte Sutton*. *Browne on Statute of Frauds*, 352, 383, *sec.* 369, and note 5. 1 *Md. Rep.*, 435, *Ijams vs. Hoffman*. 9 *Simons*, 219, *Lord St. John vs. Boughton*. 7 *Leigh*, 165, *Smith vs. Jones*. 7 *Blackf.*, 568, *Hart vs. Woods*. 3 *Wend.*, 386, *Frost vs. Hill*. 11 *Cush.*, 127, *Fessenden vs. Mussey*. 4 *Barn. & Adol.*, 443, *Bird vs. Boulter*. Writing the appellants' names was not the material part; it would have made no difference if they had been *printed*, (2 *Kent*, 511; *Browne on Statute of Frauds*, 356; 2 *Parson's on Cont.*, 289) or if they had not appeared at all. 14 *How.*, 456, *Salmon Falls Manf. Co. vs. Goddard*. 5 *G. & J.*, 401, *Bernard vs. Torrance*. 5 *H. & J.*, 117, *Batturs vs. Sellers*. White's adding the price and terms, made what had been done by Hall as much his act as if it had been written by his own hand. It is said, by the appellant's counsel, that the Statute requires the signing by the party, or his authorized *agent*, and that the *clerk* of the agent is not the agent of the party. The word agent is used in the Statute in its ordinary common law acceptation. An agent may make his clerk do a mere *mechanical* act. He cannot delegate those things requiring integrity, intelligence, fidelity, or the exercise of discretion—he cannot send his clerk out to make the contract of sale, but such a delegation of power is quite different from a case like this, where the agent merely uses the *hand of the clerk*, acting under his eye and supervision, to perform a mere mechanical act. The hand of the clerk exercises no discretion or intelligence. But if it

be conceded, as the authorities establish, that the memorandum, or any part of it, may be *printed*, this is a concession of the power of the *clerk* to do the same mechanical act as the man who sets up the type. The appellees were entitled to show, as they did, by the testimony of White & Elder, that this entry and the other memoranda which they relied on as binding the appellant, contained, acccording to the received mercantile interpretation of them, the terms of the contract which was made. 14 *How.*, 456. 7 *G. & J.*, 321, *Dorsey vs. Eagle.* 10 *Md. Rep.*, 248, *Burroughs vs. Langley.* 9 *G. & J.*, 220, *Powell vs. Bradlee.* The question, *when* White added his part to the memorandum, is not raised by the prayers on the part of the appellants. The presumption is that it was made on the *same day.* 6 *Md. Rep.*, 86, *Barry vs. Hoffman.* It is said that the proviso to this prayer submits a question *of law* to the jury, but, upon a proper construction of its language, we do not think it is objectionable on this ground. We do not think it submits to the jury the *interpretation* of a *written* contract. For these reasons the appellees' first and fourth prayers were properly granted and the appellant's first prayer properly refused.

2nd. That the entry made by Murgiondo, in appellant's sales-book, as a memorandum of a sale made or confirmed by him, within the scope of his authority, is sufficient under the Statute of Frauds to bind his principals. At all events the other papers enumerated in the second and third instructions, his letters, Williams' telegram, and the entry in White & Elder's sales-book may be connected together, if made by competent authority, and from them all the terms of sale can be gathered. *Smith on Cont.*, 75, 76. *Browne on Statute of Frauds*, 350. 14 *How.*, 456, 457. 6 *Md. Rep.*, 10, *Atwell vs. Miller.* 2 *Parsons on Cont.*, 285, 286, *note (c.)* And the second and third prayers of the appellees were properly granted.

3rd. That the presumption of law is, in the absence of evidence to the contrary, that the memorandum given by White & Elder to the appellees was, as affirmed by their fifth prayer, written on the day of its date. 11 *Md. Rep.*, 232,

*Williams vs. Banks.* 3 *Md. Rep.*, 228, *Glenn vs. Grover.* 6 *Md. Rep.*, 86, *Barry vs. Hoffman.*

4th. That the circumstances enumerated in the appellant's second prayer did not revoke the authority of White & Elder to give a memorandum of a sale which they had previously made with proper authority. The appellants, even if they so intended, had no right to prevent them from giving it. Williams, in his interview with Elder, did not pretend to deny that the sale was binding on the appellants, but only said they would exercise their right to be very particular about the paper, and the brokers could not have abandoned, even if they had so intended, the rights of the appellees. 5 *G. & J.*, 384, *Bernard vs. Torrance.* 7 *Md. Rep.*, 259, *Creager vs. Link. Story on Agency*, sec. 467. 5 *H. & J.*, 120, *Batturs vs. Sellers.* The Statute of Frauds only requires the sale to be *evidenced* by writing, and the appellants had no more right to prevent White & Elder from giving such *evidence* than from giving their testimony on the stand. 2 *Parson's on Cont.*, 337, and *note* (*h.*) 2 *G. & J.*, 227, *Stoddert vs. The Vestry, &c.* 14 *Eng. Law & Eq. Rep.*, 247, 248, *Leroux vs. Brown. Browne on Statute of Frauds*, 117. 5 *Md. Rep.*, 73, *Albert & wife vs. Winn & Ross.*

5th. That the authority of White & Elder to make the sale was a question of fact to be found by the jury; and if they did, within the scope of their authority, make an absolute sale, not subject to the approval of the appellants, it is immaterial whether White was influenced by the supposed approbation of Murgiondo or not, or whether the appellants afterwards objected to it or not. That which is good and valid cannot be rendered defective by something that would have been surplussage if resorted to and used. The question is not what White & Elder *thought* about their authority, but whether they had it, *in fact*, or not. 16 *How.*, 25, *Turner vs. Yates.* The appellant's third prayer was, therefore, properly rejected.

6th. That the testimony of Jenkins, on which the appel-

lants' fourth prayer is based, obviously refers to a sale made by a broker, under what the witness considers his ordinary authority, merely to *report an offer* to his principal, and deriving its validity from the approbation of the latter. The approval by the principal of the sale on credit, under such circumstances, is equivalent to a sale made by himself on credit, when he would be obliged, if nothing had been said about the satisfactoriness of paper, to take that of the purchaser, because he had stipulated for no other. The witness in speaking of the mercantile interpretation of the paper which was given to the appellees, clearly means to confine it to such a case; for until a hypothetical case is afterwards put to him by the appellees' counsel, he is unable to imagine one in which a broker would be entitled to make a sale otherwise than subject to the approval of his principal; he says, "whenever the broker has authority to sell at a particular price the principal has a right to determine whether the paper is satisfactory or not." The memorandum in question, therefore, unless made by a broker authorized to do more than simply report an offer, *i. e.*, to make a positive sale, means, in the opinion of the witness, as in that of White and Elder and Chapman, that the seller has a right to judge of the satisfactoriness of the paper. Except upon the hypothesis of a sale on credit, reported by a broker for the approbation of his principal and by him approved, which approbation would import an agreement to accept the paper of the purchaser alone, there is no evidence whatever to support the prayer— for Jenkins concurs with the other witnesses in saying, if the sale be simply *made* by the broker and not afterwards approved by the principal, the latter has a right to determine whether the paper is satisfactory. There was, therefore, no evidence to support the prayer, as applicable to a sale made by a broker, as in this case, and not subsequently approved by the principal—dependent for its validity, not upon the subsequent approbation of the principal, but upon the original authority of the broker. The prayer in question is liable moreover to a fundamental and fatal objection. It asks the

court, substantially, to instruct the jury, that if a sale, without any express stipulation as to the character of the paper to be given, does not, according to usage, authorize the vendor to require satisfactory paper, then of consequence and as matter of law, a memorandum, containing no stipulation as to paper, is no sufficient or true memorandum of a bargain, in which the paper was to be made satisfactory to the vendor. The prayer ignores altogether the evidence of Mr. Elder, given and received without objection, wherein it is expressly stated that, as a matter of mercantile usage, the very memorandum in question signifies precisely what the prayer requires the court to declare as matter of law, that it does not. The evidence of Mr. Jenkins, even if properly construed, as contradicting that of Mr. Elder, can establish, at the most, only a conflict of evidence as to the meaning attached by mercantile custom to certain words. This conflict it was for the jury to reconcile, and not for the court to overlook or override. The appellants' fourth prayer was, therefore, properly rejected.

7th. That the appellees offered to perform all the obligations imposed by the contract upon them, and as the appellants refused to comply with their part of it, the former were not bound to prove that they had either the money or the notes ready to hand over contemporaneously with the delivery of the coffee. How could we furnish paper satisfactory to parties who refused any paper, and utterly disclaimed any rights of ours under the contract? 7 *Md. Rep.* 314, *Balto. & Ohio R. R. Co. vs. Resley.* 2 *Md. Rep.*, 60, *Bull vs. Schuberth.* 1 *Chitty's Plead.*, 326, 330. 1 *Arch., N. P.* in 49 *Law Lib.*, 66. 7 *Taunt.*, 315, *Levy vs. Lord Herbert.* 18 *How.*, 519, *Watson vs. Tarpley.*

8th. That even if the appellants had, on the 31st of August, refused to comply with the terms of sale, of which, however, there is no evidence, they were still entitled, as a matter of law, to a reasonable time after demand to do so. 14 *How.*, 455, 456. They were entitled to it by usage, and, until the expiration of that reasonable time, there was no absolute breach of the contract. The appellants had a *locus*

*penitentiæ*, and could have. complied with the terms of sale, and have prevented their liability to a suit, notwithstanding their previous refusal. The appellees would have been no more entitled to sue before, than on a note not due, which they were told the makers could not and would not pay at maturity. The proper measure of damages is the value of the coffee when it *ought*, under the contract, to have been delivered, and the jury were, therefore, entitled to go beyond the 31st of August, if the appellants might, without a breach of the contract, have postponed the delivery beyond that time. 1 *H. & G.*, 464, *Williamson vs. Dillon.* 6 *H. & J.*, 301, *Cannell vs. M'Clean* 3 *Cranch*, 298, *Douglass vs. McAllister.* 1 *Md. Rep.*, 343, *Middlekauff vs. Smith.* 75 *Eng. C. L. Rep.*, 691, *Hochster vs. De La Tour.* 2 *Parsons on Cont.*, 481. *Mayne on Damages*, 91. The appellants' sixth prayer was, therefore, properly refused.

The remarks of the judge are not before this court for review, for he says, "all the instructions on the law which he meant to give to the jury, were contained in the plaintiffs' prayers as granted and modified."

ECCLESTON, J., delivered the opinion of this court:

At the trial of this cause, the plaintiffs offered five prayers; the 2nd, 3rd and 5th, were granted without alteration, and the 1st and 4th were modified, by the court, and then granted. The defendant offered six prayers, all of which were refused.

The judgment was rendered for the plaintiffs upon a verdict in their favor, and the defendant appealed.

One bill of exceptions contains all the evidence and all the prayers.

The plaintiffs examined A. A. White as a witness, who gave evidence tending to prove that White & Elder, as partners, were engaged in the business of merchandise brokers, and in the sale of merchandise on commission. That White as a member of said firm, and under authority from William Howell & Son, made the sale of coffee now in dispute.

That White then ordered R. W. Hall, the clerk of White & Elder, to make an entry of the sale in the blotter of the firm, as said firm usually did in their blotter.    That the entry was accordingly made by Hall, in part, and afterwards completed by White; which entry is as follows:

| | | | | |
|---|---|---|---|---|
| "1853, Augt. 26. | | | C. W , 1244 bags Rio coffee. | |
| Wm. Howell & Son. | | | Paper to be satisfactory to the | |
| Woods, B. & Co. | | | sellers. | |
| G | 1 | 26 | | |
| W | 2 | 42 | | |
| | 3 | 27 | | |
| | 4 | 62 | | |
| | 5 | 24 | | |
| | 6 | 70 | | |
| | 7 | 60 | | |
| | 8 | 58 | | |
| | 9 | 72 | | |
| | 10 | 85 | | |
| | 11 | 38 | | |
| | 12 | 39 | | |
| | 13 | 43 | | |
| | 14 | 68 | | |
| | 15 | 101 | | |
| | 16 | 30 | | |
| | 17 | 95 | | |
| | 18 | 34 | | |
| | 19 | 26 | | |
| | 20 | 60 | | |
| | 21 | 52 | | |
| | 22 | 16 | | |
| | 23 | 56 | | |
| | 24 | 60 | 1244 | $9\frac{3}{4}$" |

The said White, also testified that all of this entry is in the handwriting of Hall, except the figures "$9\frac{3}{4}$," and the words "paper to be satisfactory to the sellers;" which excepted figures and words are in the handwriting of the witness, who further stated, on cross examination, that he stood at the table by Hall, while Hall made the entries.

The plaintiffs, in their first prayer, insist that "the said entry is a sufficient note or memorandum, in writing, of a contract, to bind the defendant in this action." The correctness of this proposition is denied by the appellant, for the reason that, if the memorandum was signed at all, it was signed, not by a broker, but by a broker's clerk, who had no authority to do so, the latter acting as sub-agent, only, of the former, who was but an agent himself, in a transaction or business, which prohibited any delegation of his authority to a sub-agent.    But the appellees consider the memorandum equally as valid and binding as if it had been prepared and signed by White himself; because it was written and signed, in the blotter or sales-book of White & Elder, by Hall, their

clerk, under the direction of White, he standing by the table whilst Hall made the entry, so far as it was made by him.

Apart from all other objections urged by the appellant to the appellees' first prayer, supposing White & Elder had authority to make sale of the coffee, and did make a sale thereof, and that the terms of said sale are correctly and sufficiently set forth in the entry or memorandum on the blotter of White & Elder, we propose, in the first place, to inquire whether the entry or memorandum is a valid and binding entry or memorandum of the sale, notwithstanding it is all in the handwriting of Hall, their clerk, except the figures "9¾," and the words, "paper to be satisfactory to the sellers," which are in the handwriting of White? This inquiry presents the legal question, argued before us by counsel, whether a broker, having made a contract of sale, can authorise his clerk *to make and sign an entry or memorandum thereof,* under his direction and in his presence, so as to bind the parties named in the contract?

This question does not seem to have been conclusively settled. Whilst there are authorities which may be considered as favoring the doctrine that although a broker may, as an agent, make and sign a valid contract, for his principal, yet his agency is such that no portion thereof, under any circumstances, can be delegated to his clerk, there are others which speak of it as an open question, and others, again, seem to sustain the authority of the clerk to reduce the contract to writing, and sign the same, where he exercises no discretion, but merely acts *ministerially* or *mechanically,* under the direction and supervision of his employer, the broker. As authorities of the first class, reference is generally made to *Blore vs. Sutton,* 3 *Merivale,* 237, and *Henderson vs. Barnewall,* 1 *Younge & Jervis,* 387.

In *Browne on Stat. of Frauds,* sec. 369, after stating the authority of an auctioneer's clerk to write down the name of the buyer, under his principal's direction, the author says: "It has been decided that the rule did not embrace the clerk of a broker." The decision referred to in this note is *Henderson vs. Barnewall.* And the writer adds: "But even this

seems now to be open to question." As authority for saying which, he cites *Townend vs. Drakeford*, 1 *Carr. & Kirw.*, 20.

In *Story on Agency*, sec. 13, the learned writer treats of the "DELEGATION OF AGENCY." He there states that a factor cannot ordinarily delegate his employment, as such, to another; after which he says: "The same rule applies to a broker; for he cannot delegate his authority to another to sign a contract in behalf of his principal, without the assent of the latter. The reason is plain; for, in each of these cases, there is an exclusive personal trust and confidence reposed in the particular party. And hence is derived the maxim of the common law: *delegata potestas non potest delegari.*" This is but the enunciation of the general rule, that, *ordinarily*, a broker cannot delegate his authority. For the principle just stated is, that a "factor cannot, *ordinarily*, delegate his employment," and then it is said, "the same rule applies to a broker." In addition to which, the reason for the rule as stated, is, because there is an exclusive personal trust and confidence reposed in the broker. Surely the reason of the rule cannot be applicable where the broker stands by whilst the clerk signs the contract, under his direction, leaving no act of discretion for the clerk to perform.

The propriety of permitting an agent to perform a mere ministerial or mechanical act, by a sub-agent or deputy, even where he could not delegate any portion of his authority, requiring the exercise of the least discretion, is well considered, in the opinion of the Supreme Court of New York, delivered by *Mr. Justice Cowen*, in *Com. Bank of Lake Erie vs. Norton*, 1 *Hill*, 504. And there the cases of *Blore vs. Sutton* and *Henderson vs. Barnewall* are referred to. The court quote the language of *Lord Ellenborough* in *Mason vs. Joseph*, (1 *Smith's Rep.*, 406,) when speaking of an agent in relation to a mere *ministerial* act, he says: "Suppose, for instance, he had got the gout in his hands, and could not actually sign himself, he might have authorized another to sign for him."

In *Parsons' Mercantile Law*, 155, *Note 7*, many authori-

ties are cited in relation to the power of an agent to appoint a sub-agent, and then it is said: "A broker cannot delegate his authority." "Nor can a factor." After stating each of these propositions, the writer cites authorities, and then says: "But the power to perform a merely ministerial act, involving the exercise of no discretion, may be delegated." Then he refers to *Mason vs. Joseph*, 1 *Smith*, 406, *per Lord Ellenborough; Commercial Bank of Lake Erie vs. Norton*, 1 *Hill*, 501, and other cases.

In 1 *American Lead. Cases*, 589, (*Ed. of* 1857,) the principle is recognized, that a merely ministerial or mechanical act may be done by a sub-delegate. And the above mentioned case, in 1 *Hill*, is there referred to.

After mature reflection we are not prepared to sustain the objection to the appellees' first prayer, urged by the appellant, upon the ground that the entry or memorandum is invalid, because it was chiefly prepared and signed by Hall, the clerk. The prayer submits to the jury the inquiry, whether the entry, so far as Hall participated therein, was made by him, under the order of White, and in his presence, also whether the other portion thereof was completed by White. And there is evidence tending to prove such facts. Believing that, under such circumstances, the clerk should not be considered as performing an act of delegated authority, requiring the exercise of any discretion, but merely a ministerial act, under the order and in the presence of White, as one of the firm of White & Elder, the appellant's objection to the prayer is not, in our opinion, a valid objection.

The appellant says this prayer is erroneous, because the proviso therein requires the jury to find the "established custom and usage of merchants in the city of Baltimore," without pointing to, or specifying any particular custom or usage, when the testimony speaks of usages which relate to several points in controversy, in regard to the disputed contract; and also because the proviso authorizes the jury, without the aid of the court, upon their own views of the custom and usage which they may find, and the other proof in the cause, in connection with the entry, to decide whether the entry,

"either expressly or according to the sense and signification of its language and figures," did represent, "truly and fully the terms of, and parties to, the contract of sale."

It is a well settled general rule that written instruments are to be construed by the court alone, according to the meaning of the language therein employed, without the aid of parol proof to explain the meaning and intention of the parties thereto. If, however, in the case of a mercantile contract, "the instrument be not clear and unequivocal, evidence of the usage or course of trade at the place where the contract is to be carried into effect, is admissible to explain the meaning and remove the doubt." 2 *Kent's Com.*, 556, (*5th Ed.*)

A note or memorandum of a contract came before the Supreme Court, in the case of *Salmon Falls Manufacturing Co. vs. Goddard*, 14 *How. Rep.*, 454. There, after stating what the Statute of Frauds requires to constitute a valid note or memorandum of a bargain, the court say: "This brief note of the contract, however, like all other mercantile contracts, is subject to explanation by reference to the usage and custom of the trade, with a view to get at the true meaning of the parties." And again: "Although specific and express provisions will control the usage, and exclude any such explanation, yet, if the terms are technical, or equivocal on the face of the instrument, or made so by reference to extraneous circumstances, parol evidence of the usage and practice in the trade, is admissible to explain the meaning." See, also, *Browne on Statute of Frauds, sec.* 380.

Whilst the above authorities show that in a mercantile transaction, when the terms of a written instrument are technical, or equivocal on its face, or are made so by reference to extraneous circumstances, parol evidence of the usage and practice in the trade, is admissible to explain their meaning, the principle applicable to such a case is, that the evidence of usage, and the surrounding circumstances, in explanation and illustration, is for the consideration of the jury, the province of the court being, to instruct them, conditionally or hypothetically, what should be the proper construction or interpretation of the written instrument, as they may find the evi-

dence either to support or not to sustain the purpose for which it has been offered. This view, we think, is sustained by *Eaton vs. Smith*, 20 *Pick.*, 156, and *Neilson vs. Harford*, 8 *Mees. & Welsby*, 823. See, also, *Morrell vs. Frith*, 3 *Mees. & Wels.*, 406.

In *Eaton vs. Smith*, C. J. Shaw, in delivering the opinion of the court, says: "When a new and unusual word is used in a contract, or when a word is used in a technical or peculiar sense, as applicable to any trade or branch of business, or to any particular class of people, it is proper to receive evidence of usage, to explain and illustrate it, and that evidence is to be considered by the jury; and the province of the court will then be, to instruct the jury what will be the legal effect of the contract or instrument, as they shall find the meaning of the word, modified or explained by the usage."

Speaking for the court, in *Neilson vs. Harford*, Baron Parke says: "Then we come to the question itself, which depends on the proper construction to be put on the specification. It was contended that of this construction the jury were to judge. We are clearly of a different opinion. The construction of all written instruments belongs to the court alone, whose duty it is to construe all such instruments, as soon as the true meaning of the words in which they are couched, and the surrounding circumstances, if any, have been ascertained as facts by the jury; and it is the duty of the jury to take the construction from the court, either absolutely, if there be no words to be construed as words of art, or phrases used in commerce, and no surrounding circumstances to be ascertained; or conditionally, when those words or circumstances are necessarily referred to them. Unless this were so, there would be no certainty in the law; for a misconstruction by the court is the proper subject, by means of a bill of exceptions, of redress in a court of error; but a misconstruction by the jury cannot be set right, at all, effectually."

Without any construction of the entry given by the court, either absolute or conditional, the proviso in the prayer as granted, instructed the jury to inquire and to determine, themselves, whether the entry represented truly and fully the

terms of, and parties to, the contract of sale. They were to ascertain whether the entry did this, "either expressly, or according to the sense and signification of its language and figures, under the established custom and usage of merchants, in the city of Baltimore, at the time—if they should find such custom and usage—and the other proof in the cause." This was submitting to the jury, not merely to ascertain the meaning of technical, or equivocal terms, words and figures, or phrases used in trade, according to the usage of trade, but it authorized the jury to ascertain the terms of the verbal contract, also to ascertain by their own interpretation of the entry, whether it expressly represented truly and fully, the terms of the said verbal contract, and if not expressly, whether, according to their interpretation of the sense and signification of the language and figures of the entry as ascertained by the aid of such custom and usage as they might find, and the other proof in the cause, the entry corresponded with the contract as made and truly and fully represented the terms thereof. In other words, the prayer authorized the jury to construe the entry or memorandum, without any absolute or conditional construction thereof by the court. This was erroneous, and the prayer should not have been granted.

The plaintiffs' second prayer begins by saying: "If the jury shall find, from the evidence, the facts in the plaintiffs' first prayer," and concludes with a proviso, which is considered erroneous, for the reasons assigned in objection to the proviso contained in the first prayer.

The third prayer is compounded of the first and second, and the reasons given for holding that they were improperly granted, are also applicable to the third.

The fourth prayer is compounded of the first and second, and the first proviso contained in this is obnoxious to the objections, for which we have considered the proviso in the first prayer erroneous. The proviso thereto, added by the court, is also considered erroneous, because it was calculated to mislead the jury.

The fifth prayer of the plaintiffs, we think, was properly

granted. The proposition contained therein is sustained by *Glenn vs. Grover,* 3 *Md. Rep.,* 228; *Barry vs. Hoffman, et al.,* 6 *Md. Rep.,* 86, and *Williams vs. Banks,* 11 *Md. Rep.,* 232.

Having examined the plaintiffs' prayers, we will now consider those of the defendant.

The first asked an instruction to the jury that, if they should find the facts therein specified, then the entry on the blotter is not a sufficient note or memorandum of the bargain. The first ground of objection to the entry is the participation therein of Hall, the clerk. The views expressed on this subject, whilst considering the plaintiffs' first prayer, are deemed sufficient to show that this is not a valid objection to the entry; and, therefore, the refusal to grant the prayer now before us is not erroneous, so far as relates to this question.

The entry is set forth in the prayer, which shows that no time for payment of the price of the coffee is stated therein. And for the purpose of presenting an objection to the entry, because it contains no specification of any credit or time of payment, the prayer submits the proposition that if the jury shall find a bargain, in relation to the coffee, was made, "and that the terms of such bargain as made, were, that there should be a credit of six months, for payment of the price, and that the said price should be settled for by paper satisfactory to said firm of William Howell & Son, or else in cash at the usual discount," that no part of the price was paid, and no part of the coffee was delivered, "then the said entry is not a sufficient note or memorandum of the said bargain to bind said firm." The position here taken is, that if the jury should find the contract made was a sale upon six months' credit, inasmuch as the entry makes no mention of any credit, the contract is not truly and correctly represented by the entry, and, therefore, it is not a sufficient note or memorandum of the contract to bind the firm of William Howell & Son, or the defendant, as surviving partner of said firm.

Admitting that by the express terms of the contract, as made, there was to be a credit of six months, and there is no credit mentioned in the entry, nevertheless, the

court committed no error in refusing to grant the instruction prayed for. The plaintiffs had offered uncontradicted evidence tending to prove that, by mercantile usage, the credit on a sale of coffee is always six months, where there is no stipu·lation to the contrary. The truth of that evidence the court were bound to assume, when considering whether the defendant's prayer should be granted or not. Viewing the entry in connection with the conceded truth of such evidence, it could not be considered an insufficient note or memorandum, for want of a proper, or any specification of the length of credit. Being an entry for a sale of coffee, and no credit stated, it was, according to the proof of the usage, an entry of a sale with six months' credit. At least it was proper that the court should have regarded such to have been the effect of the evidence, when deciding upon the prayer.

In *Cole vs. Hebb*, 7 *G. & J.*, 26, the county court had refused a prayer which had been offered at the instance of the defendant, who became the appellant. The Court of Appeals approved of this refusal, and held, that: "In granting an instruction at the request of the defendant, the court must assume the truth of all the facts of which the plaintiff had offered testimony, legally sufficient to warrant the jury in finding them, which are not inconsistent with the facts, the belief of which by the jury was made the groundwork of the prayer."

In *Wilson, Adm'r ad col. of Owens, vs. Smith*, 10 *Md. Rep.*, 75, it is said by the court: "The prayer on the part of the defendant does not present all the facts, but only a part of them, studiously excluding all allusion to the evidence in regard to the state of the records of the register of wills, and of the declarations of Mrs. Owens and Lowe, that no letters of administration had been granted. Although it is the right of a party to segregate a portion of the testimony in a cause, and ask the opinion of the court upon it, (1 *Gill*, 127,) yet the court will not grant such instruction, if it be such as will likely mislead the jury; and we consider the direction asked on the part of the defendant of such a character."

In *McTavish vs. Carroll*, 7 *Md. Rep.*, 366, the court says:

"It is certainly true, that when the proof the defendant, if believed by the jury, would establish any proposition incon·sistent with the theory of the plaintiff's prayer, which is based upon his own evidence, such prayer cannot be given, because it must assume or admit the truth of all the defendant's proof on the subject."

The hypothesis of the defendant's second prayer is, that if the jury should find the facts therein mentioned then the memorandum, which is described in that prayer as having been signed by White & Elder, and written by White and delivered to the plaintiffs, is not a sufficient note or memo·randum of the bargain to bind the firm of William Howell & Son, or the defendant. Without intending to decide whether there was or was not such proof as would have warranted the jury in finding the enumerated facts, we think there was evidence legally tending to prove them; and upon the supposition of their being found by the jury, the conclusion of the prayer was correct. If this memorandum was made and delivered under such circumstances as are set forth in the prayer, then *it* could not be regarded as a note or memorandum of the contract, which could bind the firm, of which the defendant is the surviving partner. The prayer, therefore, should not have been refused. The ruling on this prayer is, of course, confined exclusively to the memorandum therein described.

The third prayer was properly refused. Supposing there may be conflicting evidence as to whether White & Elder had authority to make an absolute sale of the coffee, not subject to the approval of the firm of William Howell & Son; still there is evidence tending to prove such absolute authority, and whether they had it or not was a question to be decided by the jury, upon the proof. If within the scope of such authority, White, as one of the firm of White & Elder, did make an absolute sale, not subject to the approval of William Howell & Son, it is not material whether White was influenced by the supposed approbation of Murgiondo, the clerk, or not, or whether the sale was afterwards objected to by William Howell & Son.

Williams, surviving partner of Howell, *vs.* Woods, Bridges & Co.

The position taken in the *fourth* prayer is, that the memorandum, mentioned in the defendant's second prayer, is not a sufficient note or memorandum of the alleged bargain, in case the jury should find, from the evidence, that the bargain was made on the terms, that the paper should be satisfactory to the seller.  It will be seen that this memorandum does not mention whether the paper for the price of the coffee should be satisfactory to the seller or not.  The grounds on which the prayer is based, are presented hypothetically to the consideration of the jury, and if found by them to be true, were, in our opinion, sufficient to justify the instruction asked.  The facts set forth as the hypothesis of the second prayer of the defendant are first introduced; it is then made the duty of the jury to find, whether, a bargain was made at six months' credit, the paper therefor to be satisfactory to the seller; whether, by the usage and custom of merchants, a sale of coffee on credit, without any stipulation as to the paper to be given therefor, means, that the paper of the purchaser is to be received for the price of the coffee, and that in such case the seller would not be entitled to demand paper of other persons, or to require any thing more than the mere paper of the purchasers; and, whether, by the usage and custom of merchants, a sale of coffee on credit, on the terms that the paper shall be made satisfactory to the seller, means, that the seller has an absolute and unqualified right to judge for himself, as to the satisfactoriness of the paper, and cannot be required to accept any paper, except such as the seller may actually agree to accept for the price.

The questions submitted to the jury, by the prayer, in regard to usage, are specifically and distinctly presented; the evidence in relation thereto is conflicting or inconsistent.  In such a state of case a party has the right to ask the court to instruct the jury, what should be the legal effect of their finding that the facts which are made the groundwork of his prayer are true.  When the evidence relied on to sustain the facts, which are the basis of a prayer, is in conflict, or inconsistent with other evidence, offered by the opposite party, in the cause, in relation to the same facts, the prayer should not

33      v.16

be refused, merely, because it does not mention or notice the opposing or conflicting evidence. Under the circumstances here presented, the defendant had the right "to segregate a portion of the testimony in the cause, and ask the opinion of the court upon it." And, we do not think, his prayer, in doing so, was calculated to mislead the jury. The defendant had given evidence in support of the usage, or facts, which were made the basis, or hypothesis, of his prayer, which evidence was contradicted by, and inconsistent with evidence offered by the plaintiffs, in relation to the same facts, or usage in reference to the same subjects. The prayer, therefore, is not liable to objection, as the appellees' counsel have supposed it to be, because it ignores, or omits to notice evidence going to show, that according to the usage of merchants in the city of Baltimore, in every sale of coffee on credit, the paper is to be satisfactory to the seller, in the absence of any stipulation to the contrary. In our opinion the prayer ought to have been granted.

The defendant's fifth prayer was properly refused. The proof does not show that the coffee was to be delivered or paid for, either by satisfactory paper or by cash, on any particular day, or at any specified period of time. No part of the coffee was delivered, nor was there any offer to deliver it; on the contrary the plaintiffs received notice, from William Howell & Son, very promptly, after the latter were informed of the alleged bargain, that they did not intend to comply therewith. Under such circumstances, the plaintiffs were not bound to prove, at the trial, what this prayer assumes was necessary to entitle them to a verdict.

The doctrine set forth in the sixth prayer of the defendant is, that if the jury should find that William Howell & Son, on the 31st day of August 1853, expressly refused to ratify or comply with the alleged sale of coffee, and expressly refused to deliver the coffee, and the plaintiffs, on that day, had knowledge of such refusal, then the said refusal constituted a breach of the contract of sale, on the said 31st day of August; and if they should find that at the time of such breach, the plaintiffs had not paid any part of the price of the

coffee, and had not delivered, or tendered, notes satisfactory to William Howell & Son, for the price of the coffee, or any part thereof, then the measure of damages, in case the jury should find for the plaintiffs upon the issues joined in this case, is the difference, if any, between the price of a lot of coffee, of the same quantity and quality, at the time of such breach, and the price at which the same had been sold, and such interest thereon as the jury might think right; and if the jury should not find that the price had increased at the time of such breach, beyond the price at which the coffee is alleged to have been sold, then the jury, in case they should find for the plaintiffs, should find their verdict merely for nominal damages.

From a letter of the plaintiffs, dated the 1st of September 1853, it appears that on the preceding day, (the 31st of August,) they had knowledge of the peremptory refusal of the firm of William Howell & Son to comply with the alleged contract of sale.

In *Mayne on Damages*, 82, in the *Law Library*, when treating of "*Actions for not delivering goods*," after commenting upon several cases, it is said: "In all these cases there was a stated time fixed for the completion of the contract. Where there is no time fixed, damages will be calculated from the period at which the defendant refuses to perform it. Such a refusal leaves no further *locus penitentiae* to himself, and of course the plaintiff cannot treat the agreement as any longer subsisting."

Believing this to be a correct statement of the law, in regard to damages in a case like the present, we deem it sufficient, without any thing further, to show that the theory of the defendant's last prayer is correct, and, therefore, the refusal of it was erroneous.

It is not considered necessary to express any opinion upon what have been called, "verbal instructions given by the judge to the jury," inasmuch as the record shows the court declared, "that all the instructions on the law, which it meant to give to the jury, were contained in the plaintiffs' prayers, as granted and modified.

Upon the first, second, third and fourth of the appellees' prayers, and upon the second, fourth and sixth of the appellant's prayers, the rulings of the court below are reversed. Upon the fifth of the appellees, and upon the first, third and fifth of the appellant, the rulings are affirmed.

*Judgment reversed and procedendo awarded.*

(Decided June 28th, 1860.)