(Decided October 29th, 1861.)


# MARY E. SMITH vs. SAMUEL B. WILSON, Admr. ad col. of SAMUEL OWENS.

The grant of letters of administration by an orphans court cannot be *pre-
sumed* from *lapse of time;* the grant of such letters is a *judicial act* and
must be proved by the record; before inferior evidence of the contents
of such records can be received, their existence and loss must be ac-
counted for, or that mutilation from time or accident has made them
illegible.

Administration upon the estate of a deceased party is indispensable to the
derivation of title to his personal estate.

APPEAL from the Circuit Court for Anne Arundel county.

*Replevin,* for a negro slave named Milly, brought on the
30th of April 1849, by the appellee against the appellant.
Pleas *non cepit,* property in the defendant, property in a
stranger, and *actio non accrevit infra tres annos.*    On the
former appeal in this case by the plaintiff, reported in 10

*Md. Rep.*, 67, the judgment was reversed and a writ of *procedendo* ordered. Under this writ a trial was had in Calvert county, where the suit was originally instituted, and the jury were unable to agree upon a verdict. The case was removed, upon suggestion of the defendant, to Anne Arundel county, where the present trial, resulting in a verdict for the plaintiff, was had.

*1st Exception.* It was agreed that the evidence in the former trial as contained in the *procedendo* record, including the documentary evidence, may be read to the jury at the present trial as if given to them orally by the several witnesses, therein named, from the witness stand. From this evidence it appears that the plaintiff, to support the issues joined on his part, having proved the granting of letters *ad colligendum* to him in due form of law, by the orphans court of Calvert county, on the 23rd of February 1849, on the estate of Samuel Owens, who died in said county in the year 1815, then proved by Richard Mackall, the register of wills for Calvert county, that he has diligently examined the records of his office, and that from them it nowhere appeared that any letters testamentary, or of administration, were ever granted upon the estate of said Samuel Owens, or other proceeding had in reference thereto, prior to the appointment of the plaintiff, in this case, administrator *ad colligendum*. The plaintiff then proved that, the negro slave Milly, in controversy in this suit, was owned by the said Samuel Owens at the time of his death. Other evidence was then offered on both sides, the purport of which is sufficiently stated in the opinion of this court upon the former appeal in 10 *Md. Rep.*, 73 to 75. The defendant then asked the court to instruct the jury as follows:

1st. That from the evidence in this cause, if believed by the jury, they may presume that letters testamentary or of administration had been granted on the personal estate of the said Samuel Owens, and that the said estate had been settled up, and that the said negro Milly was held by the said Mary Owens, as tenant for life under the will of Samuel

Owens, and that if they so find then the plaintiff as collector, as aforesaid, is not entitled to recover in this action.

2nd. That from the evidence in this cause,. if believed by the jury, they may find that Mary Owens, the widow and legatee of Samuel Owens aforesaid, sold her life-estate in the said negro Milly, and delivered her with the consent of all the legatees in reversion, of the said negro Milly, they being found to be of full age at the time of the consent, or if under age at that time, after arriving at full age, and knowing of such sale, acquiesced therein, and if the jury further find that the said sale was made for the payment of the debts of the said Samuel Owens, and that the said debts have all been paid, then that the plaintiff, as collector of the said Samuel Owens, has no right to recover in this action.

The court (Brewer J.) granted the first prayer and rejected the second, to which rejection of her said second prayer the defendant excepted.

*2nd Exception.* The plaintiff then on the whole evidence, as contained in the first bill of exceptions, and which is to be considered as part of this, and as inserted therein, prayed the court to instruct the jury as follows:

1st. That the facts and circumstances, as given in evidence in this case, if believed by them, are not sufficient in law to warrant. the jury in presuming that Mary Owens took out letters testamentary or of administration on the personal estate of Samuel Owens.

2nd. That from all the evidence in the cause, if believed by them, the jury may find that no letters testamentary or of administration, were ever granted on the personal estate of Samuel Owens, by the orphans court of Calvert county, and that no proceedings were ever had in the said orphans court, in reference to the said estate, prior to the appointment of the plaintiff as administrator *ad colligendum* thereon, and if the jury so find, and shall believe the other evidence in the cause, they should find a verdict for the plaintiff.

3rd. That if, from the evidence, the jury shall believe, that in the sale of negro Milly in 1834, to Abraham Lowe, if the jury shall find such sale, the said Mary Owens did not sell

the said negro as executrix or administratrix of Samuel Owens, but only sold the interest she claimed under his will, and shall further find that up to the time of granting the letters *ad colligendum* to the plaintiff, there had been no administration upon the personal estate of the said Samuel Owens, then that such sale conveyed no such title to the said Abraham Lowe, or his assigns, in said negro woman, as under the pleadings and evidence in this case, would be a bar to the plaintiff's right of recovery.

4th. That if from all the facts and evidence in this cause, if believed by them, the jury do not find that Mary Owens took out letters testamentary or of administration upon the personal estate of Samuel Owens, or that any other person administered upon the same, prior to the granting of letters *ad colligendum* to the plaintiff, and shall believe the other evidence in this cause, that then the plaintiff is entitled to recover, although they should find that, in the year 1834, the said Mary Owens sold and delivered the said negro woman Milly to Abraham Lowe as a slave for life.

The court rejected the first of these prayers and granted the others, to which granting of the plaintiff's second, third and fourth prayers the defendant excepted, and the verdict and judgment being against her, appealed.

The cause was argued before Le Grand, C. J., Bartol. and Goldsborough, J.

*A. Randall,* for the appellant:

1st. The defendant's second prayer should have been granted:

1st. Because if Mary Owens sold this negro and delivered her with the consent of all the legatees in reversion, for the payment of the debts of the testator, which were all so paid off, then was there such a sale of this negro as concluded all the parties interested, from denying or impeaching the title conveyed by themselves, and it would be a *fraud* to take all the benefit of this, their own contract, and afterwards deny its validity. 9 *Gill,* 339, 337, *Clarke vs. Marriott.* 5 *Johns. Ch. Rep.,* 188, *Higinbotham vs. Burnet.* 10 *G. &*

*J.*, 323, *Hardy vs. Summers.* 8 *Gill*, 247, *Alexander vs. Walter.* 8 *Md. Rep.*, 251, *McClellan vs. Kennedy.* 7 *Gill,* 377, *Richards vs. Swan.* 4 *Md. Rep.*, 435, *Ridgeley vs. Crandall & Wife.* 5 *Md. Rep.*, 51, *Cushwa vs. Cushwa.* 6 *Md., Rep.*, 235, *Mayor & C. C. of Balt., vs. Williams.* 6 *H. & J.*, 255, *Lamborn vs. Watson.* 17 *Penn. State Rep.*, 353, *McMichael vs. McDermott.* 25 *Penn. State Rep.*, 404, *Kribbs vs. Dowing.* 14 *Ark.*, 79, *Phelan vs. Dalson.* 30 *Verm.*, 238, *Taylor vs. Phillips.* 2 *Bland,* 261, *Rail Road vs. Hoye.*

2nd. Because if all these parties interested could not deny or impeach this title conveyed by themselves, how can they set up this plaintiff, who represents them alone, (all the testator's debts being conceded to have been paid off by this sale,) and through him deny their own act and commit this fraud?

3rd. Because if there were such a sale and delivery, with the consent of all the parties interested, then all things required to make that sale and delivery must be presumed, and if letters testamentary were required to be presumed for that purpose, then the jury had a right to presume that such letters had been granted, and making that presumption the plaintiff had no right to recover. 2 *G. & J.*, 80, *Winchester vs. Union Bank.* 2 *G. & .*, 86, *Allneder vs. Riston.* 2 *Gill*, 145, *Ridenour vs. Keller.* 6 *G. & J.*, 141, *Burke vs. Negro Joe.* 2 *Md. Rep.*, 420, *Lark vs. Linstead.* 9 *Gill,* 132, *Anderson vs. Garrett.*

2nd. The court also erred in granting the three prayers of the plaintiff which were granted.

1st. Because these prayers *assume* and withdraw from the jury the finding of the facts required to make out the plaintiff's case, viz: that Samuel Owens did die in possession of this negro as *a slave for life;* that letters *ad colligendum had been granted to the plaintiff* within three years before the bringing of this suit.

2nd. Because the language of these prayers is ambiguous, and calculated to mislead the jury, and to impress on the minds of the jury the necessity of their finding that these

letters of administration were *actually granted,* and the administration of the estate closed, and to preclude them from *presuming* from the facts that such letters were granted.

3rd. Because these prayers assume the truth of all the other facts offered in evidence by the defendant, which are not inconsistent with the facts severally enumerated in them, and assume also the inferences that can be drawn legitimately from the facts thus assumed, viz: that this negro was the property of Samuel Owens at the time of his death, was sold by the consent of all interested in her as a slave for life in 1834, to pay the debts of said Owens and those of her owners, and these debts were all paid; that there was a public sale of all the effects of Samuel Owens, except the negroes, in the presence of all the parties entitled to them; that the negroes were distributed among the legatees of Samuel Owens and sold by them, this negro among others, as slaves for life. Assuming these facts and inferences the jury were not bound to find a verdict for the plaintiff.

4th. Because the *third* prayer, after assuming the proof of a will and bill of sale, submits to the jury to decide upon the terms and construction of these two written instruments; whether Mrs. Owens sold under that bill of sale; what title she sold under it as executrix or the interest she claimed under this will; what was that interest; all of which are questions *of law* for the decision of the court.

5th Because this third prayer submits to the jury to decide that, by the bill of sale of Mrs. Owens to Lowe in 1834, of this negro, she only sold the interest she claimed under her husband's will, of which there was no evidence, and in direct opposition to the terms of the bill of sale, by which she sold these negroes as slaves for life, and warrants them as slaves for life, and in direct opposition to the 5th sec. of the Act of 1817, ch. 112, which forbids the sale of such an interest in a negro by such a bill of sale.

6th. Because if, according to the theory of this third prayer, the jury should find that Mrs. Owens did, in this sale, sell only the interest she claimed in this negro under her husband's will, then would such sale convey a title to Lowe,

which would be a bar to the plaintiff's right to recover, though there had been no *complete* administration on the estate of Samuel Owens, *actually* proved. 1 *Roper on Legacies*, 231, 57. *Toller on Excrs.*, 309. 2 *Wms. on Excrs.*, 858. 1 *Atk.*, 471, *Leaker vs. Burnett.* 1 *Gill*, 428, *Gardner & Hughes vs. Simmes.* 6 *G. & J.*, 183, *Evans vs. Iglehart.*

7th. Because the fourth prayer instructs the jury that the plaintiff is entitled to recover, if they do not find that letters of administration, &c., were taken out upon the estate prior to the granting of letters *ad col.*, &c., although they should find that Mrs. Owens sold and delivered this negro to Lowe in 1834, as a slave for life; whereas if she so sold this negro it was a valid sale, and all the essentials of such sale are to be presumed, and if taking out of letters were required, then that these were to be presumed to have taken place.

*Oliver Miller* and *A. B. Hagner*, for the appellee:

1st. The main question, which underlies the whole case, is that embraced in the granting of the defendant's *first* and the plaintiff's *second* prayer. If there was, in fact, no administration upon the estate of Samuel Owens, and no proceedings in the orphans court for the settlement of the same prior to the grant of letters *ad colligendum* to the appellee, and the jury were authorized from the evidence so *to find*, no title to this negro could pass to legatees, distributees, or any one else, no matter whether the debts of the estate have all been paid or not, and no matter in what capacity the widow may have acted, or professed to act, in relation to the sale of said negro. The grant of letters testamentary, or of administration upon the estate of Samuel Owens, was indispensable to the transfer of title to any and every portion of his personal estate. 8 *G. & J.*, 226, *Alexander vs. Stewart.* 4 *H. & J.*, 393, *Fishwick vs. Sewell.* 7 *Gill*, 84, *Gibbons vs. Riley.*

2nd. By the granting of these two prayers, the one declaring that from all the evidence the jury *may presume* the grant of letters on his estate, and the other declaring that they *may find* that *no letters* ever were granted prior to the grant to the plaintiff, the whole question was fairly submitted to the jury.

The defendant had the benefit of all the law she was entitled to, for on the former appeal this court decided, upon the same evidence, that it did not authorize the instruction that the jury *ought* or were *bound* to presume the grant of letters. 10 *Md. Rep.*, 75. Not only so, but by the granting of her first and the rejection of the plaintiff's first prayer, her case was placed before the jury in a more favorable position than she was entitled to have it, and the defendant's first prayer should have been granted. No case can be found of the presumption of the grant of letters testamentary or of administration. It is an official act, and must be proved by the record, and if that is lost or mutilated, secondary evidence of its contents must be shown. *Best on Presumptions*, 110, 111. 1 *Greenlf's Ev.*, sec. 20. 11 *How.*, 346, 360, *Weatherhead vs. Basker-ville.* Deeds *inter partes* may, under certain circumstances, be presumed, but not official appointments to private agencies.

3rd. There was no error in the refusal to grant the defendant's second prayer, because there is no evidence in the cause from which the jury could find, or sufficient in law to authorize them to find, that the widow sold her life-estate in this negro, and delivered her with the consent of all the legatees in reversion, or, if under age at the time of sale, that they acquiesced therein, knowing thereof after arriving at full age. On the contrary, the evidence is clear and uncontradicted, that the Hollingsheads, the grand-children, were *minors* at the time, removed to Baltimore in 1823, and never knew of or acquiesced in any such sale. Again, there is no sufficient evidence that the sale was the sale of a *life-estate.* On the contrary, the mortgage to Hance, and the bill of sale to Lowe, very clearly show that the negroes therein mentioned were conveyed, or attempted to be, absolutely as slaves for life.

4th. Whether the sale was of a *life-estate* or absolutely as a *slave for life*, no title passed thereby to Lowe, or his assigns, as against the administrator of Samuel Owens. If no administration upon his personal estate had been taken out prior to the grant of letters to the plaintiff, limitations could in no wise bar the plaintiff's right of recovery, the possession of

Lowe having commenced after the death of Samuel Owens. There was, therefore, no error in the refusal to grant the defendant's second prayer, and in the granting of the plaintiff's *third* and *fourth* prayers. 4 *H. & J.*, 428, 429, *Fishwick vs. Sewell.* 7 *H. & J.*, 17, *Haslett vs. Glenn.*

5th. The defendant's second prayer is also erroneous in submitting a question of *law* to the jury, viz., what constituted *acquiescence* in the sale. The jury may find the *facts*, but it was for the *court* to say whether these facts amounted to *acquiescence* or not. 1 *H. & G.*, 204, *Oliver vs. Gray.* 1 *H. & J.*, 477, *Patton vs. Wilmot.* 6 *G. & J.*, 291, *Steam Nav. Co. vs. Hungerford.* 11 *G. & J.*, 472, *Ragan vs. Gaither.*

6th. This *second* prayer of the defendant is also erroneous for another reason. By the Act of 1817, ch. 112, sec. 3, no sale of any slave, in which the seller is entitled for a term of years, or a limited time, is valid to transfer any title to such slave, unless the same be in writing, under the hands and seal of the seller and purchaser, and in which the interest of the seller shall be specified. This sale does not profess to have been made in conformity with this Act, and therefore passed no title to this negro.

Le Grand, C. J., delivered the opinion of this court.

This case has been heretofore before this court, on the same state of pleadings and evidence as shown by the present record. See 10 *Md. Rep.*, 67.

In the rulings of the court below we discover nothing of which the appellant can justly complain; on the contrary, we think the court allowed her more than she was entitled to, by granting her first prayer, which authorized the jury to presume the grant of letters of administration. The fact of administration on the estate of Samuel Owens, is indispensable to the defence of the appellant; and we are not aware of a single case, nor has any been referred to by counsel, in which the grant of letters has been allowed to be presumed from the lapse of time. The granting of letters of administration by the orphans court, is a judicial act, and, like all such acts, must be proven by the record. The rule on this subject is

very clearly stated by the Supreme Court of the United States, in the case of *Weatherhead's lessee vs. Baskerville, et al.,* 11 *How.,* 360.   In that case the effort was to allow the jury to infer a partition of lands from the evidence, without the production of the record, showing the partition.   What was said there is equally applicable to the attempt made in the present instance.   "By the law of Tennessee," said the court, "such a partition is a judicial act, and becomes a record.   It can only be proved as such records may be, and when it is alleged to have been lost or destroyed, its contents can only be reached by proofs of a certain and fixed kind, well known in the law. In the proper sense of the term *presumed,* the records of courts are never so.   The existence of an ancient record of another kind may sometimes be established by presumptive evidence. But that is not done without very probable proof that it once existed, and until its loss is satisfactorily accounted for.   The rule in respect to judicial records is, that before inferior evidence can be received of their contents, their existence and loss must be clearly accounted for.   It must be shown that there was such a record, that it has been lost or destroyed, or is otherwise incapable of being produced; or that its mutilation from time or accident has made it illegible.   In this last, though, not without the production of the original in the condition in which it may be.   The inferior evidence to establish the existence of a judicial record, must be something officially connected with it, such as the journals of the court, or some other entry, though short of the judgment or record, which shows that it has been judicially made.   The burning of an office, and of its records, is no proof that a particular record had ever existed.   It only lays the foundation for the inferior evidence."

In the case now before the court, there is no pretence that the record has been lost or mutilated; and the proof shows that the records of the Orphans court of Calvert county contain no allusion whatever to the fact of letters having been granted on the estate of Samuel Owens.   This is a possessory action, and depends entirely upon the title, which can only be transmitted through the instrumentality of letters of admin-

istration. It is not an action in which the equitable consider- ations urged by counsel—if they be shown to exist in point of fact—can avail to the defendant; they can be invoked, if at all, only in another tribunal.

Entertaining these views of the case, it follows that the court did not err to the injury of defendant in its action on the prayers, and the judgment must therefore be affirmed.

*Judgment affirmed.*

(Decided Oct. 29th, 1861.)