Mr. Justice ITasner
delivered the opinion of the Court:
These cases have been argued here in the first instance, and the interesting questions involved have been exhaustively discussed by counsel.
In the first case the District of Columbia claims from the Washington & Georgetown Company $20,049.66, and in the second, the sum of $153,216.15 from the Metropolitan Company.
The pleadings are .alike in essentials, and we shall consider those in the latter case, which we find printed in the record.
*363 The declaration avers the incorporation of the plaintiff and defendant corporations; that the District Government is intrusted by law with ample powers to take charge of and improve all streets, avenues, &c., of the consolidated municipality ; that by the charter of the defendant, which it duly accepted, it was authorized to construct a street railroad between certain points therein named ; that it entered upon? laid down and constructed its tracks along the streets and avenues designated, and still continues to retain and work its track along and over such streets and avenues. That by the fourth section of the charter it was provided: “ That the said corporation hereby created shall be bound to keep said tracks, and for the space of two (2) feet beyond the outer rail thereof, and also the space between the tracks, at all times well paved and in good order without expense to the United States or to the city of Washington.” That afterwards, in the- due exercise of the powers conferred upon the plaintiff and pursuant to law, it ordered and directed that said streets and avenues should be repaired and improved as follows, amending the grades and laying down new and greatly needed pavements, to wit: First street east, concrete pavement, (with a similar statement as to a large number of other streets and avenues); of which the defendant had notice. That thereupon it became and was the duty of said defendant, pursuant to said fourth section of its charter, to conform its tracks to said grade, and pave the entire space between two lines running parallel with its tracks, two feet from and outside of its exterior rails, upon and along each and all of said streets and avenues so occupied by it, in conformity with the plan prescribed by the plaintiff; which said duty and obligation said railroad company neglected to do, and did not do; and thereupon the plaintiff, in execution of its orders and plans, and to complete the repairs and improvements of said streets and avenues, was obliged to and did grade and pave said portions of said streets and avenues which, as aforesaid, should have been graded and paved by said railroad company, to wit: On said First street east, one thousand four hundred and seventy-six *364 and sixteen hund redths (1,476.16) square yards of concrete pavement at three dollars ($3) per square yard, amounting to the sum of four thousand four hundred and twenty-eight dollars and forty-eight cents, ($4,428.48), said repair and improvement of said street being completed and finished by the plaintiff, to wit: November 24,1873, (with similar statements with respect to the other streets and avenues so graded and paved.)
And the declaration concluded:
“ And the plaintiff claims as due it in all the sum of one hundred and fifty-three thousand two hundred and sixteen dollars and fifteen cents, ($158,216.15), which said account for work and material has been duly presented to the defendant and payment thereof refused, whereby an action' has accrued to the plaintiff to maintain its said action .against the defendant, and recover said sum of one hundred and fifty-thi-ee thousand two hundred and sixteen dollars and fifteen cents, ($153,216.15), for which it asks judgment.
The defendant appeared and pleaded—
1. That it is not indebted as alleged.
2. Non assumpsit infra tres annos.
3. Actio non accrevit infra tres amios.
The plaintiff joined issued upon the 1st plea, and demurred to the 2d and 3d, alleging as matter to be argued in support of the demurrer “ that the nature of the case is such that the statute of limitations as pleaded does not apply.
First. It is insisted by the plaintiff that the statute of limitations of Maryland (1715, ch. 23), which is in force here, cannot be pleaded to any action brought by the District of Columbia.
If the question were to be decided upon the construction of the statute alone, we should be very strongly inclined to sustain the plaintiff’s position.
It is perfectly well settled that statutes of limitation which undertake to abridge or destroy the right of a suitor to bring his action at any time before payment, and are therefore in derogation of the common law maxim that “ the right never *365 dies,” are to be construed strictly, and will not be extended by implication to cases not clearly designed'to be-included
It is equally true that courts, to arrive at the correct meaning of a statute, will examine its language throughout, and will import words from all portions of it, to qualify the meaning of the whole. Bode vs. State, 7 Gill., 326.
The courts of England applied these principles to the interpretation of the statute of limitations of 32 Henry TUI, ch. 2, which limited the right of action in suits of right, or assize, &c.. unless brought -within sixty years from the accrual of the right. The language was most general, “ no person or persons ” shall maintain such actions; yet, as the statute in some of the sections, speaks of the possession of the claimant “ or his ancestor,” Sir Robert Brooke, in his Reading on the Statute, says : “ A mayor and commonalty, by their name of corporation, and not by their proper names, may make title, after the statute, by eighty years past, because that is of their own possession and not of the seizen of their ancestor or predecessor, and the same of dean and chapter,” &c. Brooke Stat. of Lim., 33. And this ruling is recognized as correct by all the authorities. 6 Cornyn’s Dig., Temps (Geo. II), p. 328.
Sir Robert Brooke died more than sixty years before the enactment of 21 James I, ch. 16. It is impossible to doubt that the legislators who enacted that statute knew of this csnstruction which many years before had been placed upon the statute of Henry VIII, and were therefore aware that the introduction of similar expressions into the law they were about to enact would be taken by the courts as indicating a purpose to confine its application to individuals. And in this connection it is important to examine the phraseology of the 21 Jac. I, from which the Maryland statute was in great part taken.
In no part of it is there any reference in express terms or by allusion to actions by municipalities. The purpose of the act is declared to be the quieting of men's estates; the parties plaintiffs are spoken of throughout as “ person or persons,” and it is declared in the first section that “ no person or per *366 sons or any of their heirs” shall have or maintain such actions after, &c.; and such actions “shall be sued * * within twenty years next after title and cause of action first descended or fallen.” By section '2, in case the person entitled shall be at the time the right first descended, &c., within the age of twenty-one years, feme coverts, imprisoned, or beyond seas, then such person and persons and their heir and heirs, shall have an action within the time limited after the removal of such impediments.
By section 4, in case judgment be given for the plaintiff, in such action and be reversed for error, “.the party plaintiff, his heirs, executors or administrators, may commence a new action, &c.” And by section 7 a saving is declared in favor of plaintiffs in the enumerated personal actions who may be under age, feme covert, &c., at the time such action accrued. None of the contingencies thus referred to could possibly apply to a municipality; and the personal actions enumerated, though properly such as would be brought by individuals, could not, for the greater part, be sustained by a city government.
It. seems scarcely possible, with the rulings of the courts before them, that Parliament in enacting this statute in such words as these, could have supposed it was using language which would comprehend the rights of the powerful municipalities of England, then almost at their greatest estate in the kingdom — far more wealthy and in some respects more powerful than.the kings themselves — without adopting the precaution of adding words, (and a few words would have sufficed), that would have placed the question beyond controversy. And it is a circumstance of the utmost significance that no case has been found, and we feel justified in saying, after examining every accessible authority, that none exists, in the English reports, where the statute of 21 Jac. I, ch, 16, has been held applicable to actions brought by a municipality.
■When we examine the Maryland statute of 1715, ch. 28, its language appears to give still stronger indication that its framers never supposed they were passing a statute controlling *367 the rights of municipalities. Annapolis was then the only city in the province, and its charter was but seven years old. The provincial lawyers were generally well read men. who had acquired their learning by study in the Inns of London* and their influence in shaping the legislation of the province was naturally very great. They must have known that either express declaration or strong implication of intention was necessary to include a municipality in such a statute, and that if they used words which were properly applicable to individuals alone in describing the cases to be comprehended by the statute, the courts would limit its application accordingly,
They omitted from the law the prior sections of the 21 Jác. I, relating to suits respecting land, but added a section concerning bonds and other securities, not found in the usual statutes of limitation in this country. It seems to us that almost every section of the act contains language of the character we have referred to, strongly evincing the intention of the provincial legislature to confine itself to what the preamble declares to be the purpose of the act, “ the quieting1 of the estates of the inhabitants of the province.” In the enumeration of actions in section 2, (almost all of which are such as a municipality would be most unlikely to bring), there is an exception of such as concern “ the trade or merchandize accounts between merchant and merchants, their factors and servants, which are not residents within this province.” The act contains the saving clause as to persons under age, non compos mentis, &c., and a further provision as to actions on specialties “ where the principal debtor and. creditor have been both dead twelve years ” — contingencies as impossible of application to a municipality, as its ability to claim through an ancestor was held to be, under the 32 Henry VIII.
And again, we, are struck by the significant fact that, although the cases contained in the Maryland Reports, in which actions were brought by municipalities are numbered by the hundred, there can be found no reported case where it has been held that the statute applied to a suit brought by a municipality. In several of the cases, where the claims *368 of a city government appear to have been contested by distinguished counsel with the utmost, vigor, if we can only rely upon the dates stated by the reporter, the statute of limitations would have been a bar; but it never seems to have occurred to the counsel that it was available as a defense. Nor has such a decision been found in this jurisdiction, where for fifty years the courts have administered this statute; during which time a multitude of suits have been brought by the cities within the District, as to some of which it is but reasonable to suppose the plea of the statute would have applied.
There is a reason of special force in favor of maintaining this position with respect to municipalities which controlled the courts in England where suits were brought by ecclesiastical corporations to recover lands which had been the property of their predecessors. It was there held that as to actions to recover such properties as these corporations were inhibited by law from alienating, the statutes of limitations could not apply ; since if it were otherwise, the laws against alienation could be practically repealed, as was said, “by a side wind” by the corporations, -who had only to allow themselves to be dispossessed and then neglect to bring suit for the recovery of such possessions within the time limited by the statutes. Blanchard on Limitations, 53.
By section 55 of the Revised Statutes, District of Columbia, the District government is prohibited from releasing the indebtedness of any corporations or individual to the District.
Nothing would be simpler than for a District government wishing to evade this prohibition, to neglect to bring suit for three years against a favored debtor, which vrould operate as a bar against an action brought by their more conscientious successors to recover a claim justly due the municipality.
But we are aware that in some of the States of the Union it has been held that the statute of limitations is a bar to certain descriptions of suits brought by municipalities; and in others, that it has been held to apply to all actions corporations may bring.
*369 The decisions upon the point are confined to this country. They are not numerous and the different rulings do not appear to be based upon consistent reasoning. The cases in 66 Pa., 223, Evans vs. Erie County, and 4 Devereaux, 568, Arm, strong vs. Dalton, were suits against counties, and there it was said that small divisions of' the State, like counties, •cannot be considered as sovereign, and are not, for that reason, entitled to avail themselves of the principle, nullum tempus occurrit regí. In Angell on Limitations, 6th edition, section 38, the author, after citing the case in 4 Dev., disposes of the subject in this single sentence. “In Ohio, it was held that the statute runs against a town or city,” citing the case of Cincinnati vs. First Presbyterian Church, 5 Ohio, 298. The ruling in that case seems to be within the censure or disapproval of Judge Dillon, in the following, resume of the subject in 2 Dill, on Municipal Corporations, (3d Ed.), Sec. 675. “ Upon consideration it will perhaps appear that the following view is correct: Municipal corporations, as we have seen, have in some respects a double character — one public, the other (by way of distinction) private. As respects property not held for public use or upon public trusts, and, as respects contracts and rights of a private nature, there is no reason why such corporations should not fall within limitation statutes, and be affected by them. For example, in an action on contract or .for tort, a municipal corporation may plead or have pleaded against it the statutes of limitations.”
But such a corporation does not own and cannot alien public streets or places, and no laches on its part or on that of its officers, can defeat the right of the public thereto; yet there may grow up in consequence, private rights of more persuasive force in the particular case than those of. the public. * * * The author cannot assent to the doctrine that as respects public rights municipal corporations are within ordinary limitation statutes.”
This distinction is in consonance with the decision in City of Alton vs. Illinois Transportation Co., 12 Ill., 59, where the matter involved was the ownership of a lot of ground *370 in the city of Alton. “ "We do not think,” says the court,, “ the rights of the public are barred by our statute of limitations which prescribes that certain real actions shall be brought within seven years after possession taken by defendants. Without stopping to inquire whether statutes of limitations apply to municipalities, we entertain no doubt that this statute has no application to the case before us. Whatever title in these grounds may be vested in the city, she has. not the unqualified control and disposition of them. They were dedicated to the public for particular purposes and only for such. She may make rules and control them but cannot alien them, and holds them in trust for the people of the-State and not of Alton alone.”
For the purposes of the present decision, it will be sufficient, without discussing the applicability of the first part of Judge Dillon’s language to cases arising under the Maryland statute, that we adopt the concluding words of the learned judge, in which the author withholds his assent to the doctrine, “that, as respects public rights, municipal corporations are within ordinaiy limitation statutes.”
Second. It is contended by the plaintiff, that however the law may be with respect to municipal corporations in general, a different rule should be held to apply to suits brought by the District of Columbia, because the money claimed in such-cases is really due and payable to the United States. In support of this contention, it is insisted that the District as now constituted is but a department of the general Government; its chief officers appointed by the President; its sole legislature the Congress of the United States, which appropriates immediately half of its expenses, directs the collections of its taxes, and supervises the disbursement of the municipal revenues; and that while one-half the amount of whatever might be recovered in this suit would be paid directly into the national treasury, the other half would substantially enure to its benefit.
Certainly these circumstances place the District of Columbia with respect to the United States in a position strangely anomalous. They undoubtedly operate to reduce its powers *371 of administration much below the usual level of municipal dependence, unless they do as claimed, have the effect of communicating to it some portion of the dignity and immunities of the sovereign that has so seriously impaired its autonomy.
If the legislation of Congress had the extreme effect ascribed it by the plaintiff’, the statute of limitations could no more apply to any action brought by the District of Columbia, than it could to one brought in the name of the United States itself. The courts would certainly be controlled by the status of the real party in interest, rather than by that of the nominal plaintiff.
Thus in State Bank of Illinois vs. Brown, First Scammon? 106, it was held that the statute of limitations could not be successfully pleaded in a suit brought by the bank, in its own name, against one of its debtors, because the charter declared that the bank should belong to the State; and hence-it was considered that a debt due to the bank was really one due to the State.
But this principle cannot properly be held to embrace all suits brought by the District of Columbia, in view of the comprehensive language of the statutes establishing the form of government in force here.
The second section of the Revised Statutes relating to the District of Columbia, provides:
“ The District is created a government by the name of the District of Columbia, by which name it is constituted a body corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States.”
And the act of July 11, 1878 (20 Stats., p. 102), declares that the District of Columbia shall remain and continue a municipal corporation as provided in this section.
Its liability to be sued and impleaded to the full extent of other municipalities is plainly implied in the general language which creates it “ a body corporate for municipal purposes; ” *372 and we are of the opinion, in the absence of any provision to the contrary, that whatever liabilities may properly attach to municipalities in general are equally devolved upon the District government; and hence, that wherever the statutes of limitations of Maryland may be interposed to a claim of an ordinary municipality, it may be availed of against the District of Columbia.
Third. The question next arises, whether there is anything in the character of the claim involved in this suit, which renders the plea of the statute of limitations inapplicable as a bar to the action.
The claim grows out of an obligation imposed upon the companies by the United States, and assumed by them when they accepted the charters, under the authority of which alone they can claim any right to occupy the streets of the city and operate their roads.
By this requirement, contained in the 4th section of each charter already quoted, the companies are bound to keep their track and the adjacent part of the street described, at all times well paved and in good order without expense to the United States and to the cities named.
It was one of the few conditions imposed upon them when théy received their valuable franchises. It did not, as of course, result from the grant; for Congress might have agreed to dispense with it. Nor was it necessarily incident to the business of carrying passengers; since a large omnibus company might possibly make more extensive use of the streets in general, without incurring any liability to pay for paving any part of them. But it is wholly a statutory provision, and the liability imposed, therefore, is wholly statutory.
After the acceptance of their charters they could not be heard to object that the provision was illegal, or incapable of enforcement against them. New York City vs. Steel Railway Companies, 17 Hun. (N. Y.), 242.
This duty, it is alleged, they refused to perform, and the work was done and paid for by the District, which ■ now seeks reimbursement in this action. Upon the plain words of the statute it seems clear to us it is not within *373 the enumeration in the first section of the act of limitations of 1716, ch. 23. It is not “an action of account,” or “upon the case, upon simple contract, book debt, or account,” or “ of debt for lending,” or of" “ contract without specialty,” or “ of debt for arrearages of rent ” ; nor is it one of the other enumerated actions, as “ assault,” &c.
If it be either of the enumerated actions it could only be an action upon one of the classes of contract referred to. But the suit is not brought upon a “simple contract,” or “ contract without specialty,” upon the part of the companies to reimburse the District for the expenditure. It is based upon the obligation on their part, implied by construction of law, to repay to the District what it has expended for work they were bound by statute to perform without expense to the city. If this paving has caused any expense to the District their statutory obligation has been broken, and this fact furnishes the consideration and foundation of the claim for reimbursement. Apart from the obligation upon the District to take all proper care of the streets, imposed by statute, and the duty of the companies arising under their charters to see that this work is done without expense to the municipality, the action could not be maintained, for the unauthorized payment of money by one party for another creates no legal liability upon the latter to repay. But the right of action here grows out of and is founded upon the obligation in the charters of both the city and the companies, and the suit is an action founded upon these statutes, within the meaning of that term.
It has been held uniformly, from a period within a few years after the passage of the 21 Jac. I, that an action upon a statute was not within the limitations of that act.
This was decided in the familiar case of Talory vs. Jackson, Croke Car., 513, where it was held that the statute was no bar to an action of debt brought to recover a penalty imposed by 2 Edw. YI, for removing corn before setting apart the tithes. So in Jones vs. Pope, 1 Saund., 55, where the action was against a sheriff for an escape under the statute. 1 Rd. 2, ch. 12.
*374 And this doctrine has been repeatedly applied by the courts in Maryland, in cases arising under the act of 1715, eh. 23.
Such was the ruling in French vs. O’Healey, 2 H. & McH., 145, that an action founded on a statute cannot be barred by limitations, as debt for an escape.
So in Longwell vs. Riginder, 1 Gill, 57, it was held that a distress for rent in arrear based upon statute is not within the statute of limitations.
And in Newcomer vs. Needy, 2d Maryland, 19, it was held in 1852, on the same ground, that limitations is no defense to an action on the case against a sheriff for a false return to a ft. fa., because the officer is made answerable for such misconduct by force of an ancient statute.
So it was held in Bond vs. Harris, 2d Md. Ch. Dec., 213, that bonds given by an heir, electing to take part of the ancestor’s land and pay their shares to the other heirs, in conformity with the statute for partition of lands, are not within the Maryland statute of limitations.
So in Pease vs. Howard, 14 Johns., 479, which was an action on a judgment rendered by a justice of the peace, the court say: “ The statute (of New York) is not a bar to every action of debt, but only to those brought for arrearages of rent or founded on any contract without specialty. Debt on indenture, reserving rent is not within the statute. The settled construction of the statute is that it applies solely to actions of debt founded upon contracts in fact, as contradis-tinguished from those arising by construction of law.” In the present case the action is not founded upon a contract, in fact, within the meaning of the statute. •
But there is a further and conclusive reason why this action should not be held to be within the statute of limitations.
The municipality is charged with the entire custody of the streets and avenues of the city, and endowed with the amplest powers to pave and repair them, to change the grades or otherwise improve them, and make all necessary regulations to this end. And it is perfectly settled that this is a continuing power to be executed whenever it shall see *375 ■fit to do so in its discretion. Gozler vs. Georgetown, 6 Wheat., 597; 2 Dill., §§685-6, 780, 989, 990.
It has also full power to exact from property owners adjacent to the improvement a contribution in reimbursement of the cost, in proportion to their respective properties. Before collecting these contributions the municipality usually ascertains the aliquot part to be paid by the individuals, by an assessment. Such charges or assessments are in the nature of taxes or public dues, respecting streets and avenues, which are the common •property held for public use in trust for the body of the people, and are not owned by the municipality nor alienable by it, as a city may under ■certain circumstance sell the public property, and place the ■proceeds in the public treasury.
The imposition of such assessments is in fact the levy of a tax and is made in the exercise of the taxing power. Mayor, &c., vs. Greenmount Cemetery, 7 Md., 535.
Such assessments constitute liens upon the property of individuals subject to the charge, and are entitled to priority of payment out of the proceeds in advance of all other claims. Fulton vs. Nicholson, 7 Md., 107.
And such paving assessment liens have been expressly held to be unaffected by the Maryland statute of limitations. Esback vs. Pitts, 6 Md., 75.
In Hogan vs. Ingle, 2 Cranch C. C. Reports, 355, it was decided in this District that the statute of limitations of 1715, ch. 23, is not a bar to a distress for taxes due to the ■corporation of Washington. And no case has been found ■where the plea of the statute of limitations has been held to foe a bar to an action to collect public taxes except where •some additional statutory provision, unknown in this juris diction, has been enacted to that effect.
We were referred to the cases in 41 Iowa, 184, City of Burlington; and State vs. Yellow Jacket Mining Co., 14 Nevada, 229, as holding a contrary doctrine ; but an examination of the first case discloses that the Iowa statute in words provides that the provisions of the statute of limitations .shall apply to all actions brought by or against all bodies *376 corporate or politic, except where otherwise expressly declared, and the court held the municipality was within this express provision.
In Nevada, the statute of limitations in terms is declared to apply to all actions, whether brought by the State or individuals, and the court says the maxim nullum tempus-occurril regí has not been in force within that State since the adoption of the statute in question.
In some of the other States similar provisions are in forces and decisions based upon them have been carelessly considered as affecting the law elsewhere. Of course they can have no effect here, except as an evidence that in the absence of such a provision, the statute of limitations would not have extended to the cases included within the special enactment.
This court, by its decision in Baltimore & Ohio Railroad Company vs. District of Columbia, 3d MacArthur, 122, has recognized the binding character of claims for taxes, notwithstanding the lapse of time. In that case the railroad company sought to enjoin the District from the sale of its property for twenty years arrearages of taxes. The company had refused to pay since 1858, (twenty-two years-back), when an injunction had issued restraining a sale by a collector for taxes then claimed to be due, and the subsequent acquiescence upon the part of the city was relied upon as a forfeiture “by waiver, laches, or lapse of time.” This court overruled the other grounds of exempt tion presented by the company, and say, “ in regard to the length of time for which the company should be held liable, we ai*e of opinion that such liability reaches back for a period of twenty years from the institution of the present suit. It is a liability created by statute, and nothing short of a lapse of time sufficient to raise the presumption oí payment, will exonerate the property from its liability, and that period is twenty years.”
It cannot be doubted that the statute, as pleaded in this case, would be no reply to an action brought by the District on such a claim for taxes asserted against the property of a *377 land owner, in the absence of a statute declaring that limitations should be a bar.
Nor can it be doubted that the law would be the same if the claim sought to be enforced, instead of being an ordinary tax, were an assessment for paving against the property of a citizen.
In Magee vs. Com., use City of Pittsburg, 46 Penn., 358, which was an action by the city to recover the amount of an assessment against the defendant for his share of the cost of certain paving paid by the city, the, defendant prayed an instruction that if the paving for which the claim was filed was paid by the city more than six years before the assessment was made, the claim of the city was barred by the statute of limitations. The court refused the prayer, and this ruling was sustained by the appellate court, which says: “ The statute of limitations has no application to assessments under the acts, and the objection is grounded upon a misapprehension of the powers of the legislature.”
In the present case there has been no regular assessment against these companies. But the obligation imposed upon them by law, and which they have assumed by their acceptance of the charters, is to perform their contract duty with respect to the public streets without any such assessment or levy as might be required in the case of holders of property abutting on the streets improved by the District. They have bound themselves, as part of the consideration for their franchise, to pave the designated parts of the streets for themselves, and any previous assessment by the District would be an idle and senseless ceremony. They knew exactly how much they were required to pave, and that they were to pay for it; and they had nothing to do except to perform the work “ without expense to the United States or the District of Columbia.” The assessment could have told them nothing not already known to them; and the District of Columbia could not have made the assessment, if required to do so, without obtaining the information from the company.
These companies, therefore, occupy, as to this statutory *378 duty, the same position with respect to the statute of limitations, that they would hold if the amount chargeable against them for paving had been made the subject of a regular assessment, which they refused to pay, and for the recovery of which this action was brought. For those reasons, we are of the opinion that the claim as presented is not obnoxious to the plea of the statute of limitations, and we decide the demurrer is well taken to the second and third pleas of the defendant.
Fourth. Under the demurrer, we are forced to examine the entire case ; and a large part of the argument has been addressed to the question whether under the charters and other statutes there exists in favor of the plaintiff's a liability on the part of the defendant to perform the work described in the declaration.
1. It is contended on behalf of the defendants that the companies are not liable for entirely new pavements and changes in the grades ; and we are referred to the case of Chicago vs. Sheldon, 9 "Wall., 50, in support of this position. The decision there was based upon the special circumstances of the case. The city ordinance expressly limited the liability of the railroad company in undoubted terms to keeping the track, &c., “ in good repair and condition,” and the court reasonably decided that the company could not be held liable for curbing, grading and paving the streets, with an entirely new pavement in the face of a contrary stipulation.
But the language is widely different here. The companies, by the 4th section, are bound to keep the tracks, &c., at all times, toell paved and in good order.” By section 5, of the charter of 17th May, 1862, the Washington & ■Georgetown Railway, and section 5, of the charter of the Metropolitan Road, July 1,1864, it is enacted, “That nothing in this act shall prevent the Government, at any time, from altering the grades or otherwise improving all avenues or streets occupied by said roads ; or the respective cities from so altering or improving such streets or avenues, and the sewerage thereof; as may be under their respective authority and control ; and in such event it shall be the duty of such com- *379 party to change their said railroad so as to conform to such grade or pavement.”
By section 20, of the charter of the Metropolitan Road, it is further enacted, that the said railroad company shall keep in good repair, &c., the flagstones or cross-walks leading to, upon or over their tracks at the crossings of the streets, “and shall further, whenever necessary to render such crossings dry ■and convenient, raise or elevate the same sufficiently for that purpose, and shall adjust the adjoining pavement so as to make it convenient for carriages to pass said crossings.”
And in both charters it was provided “ that the use and maintenance of the said roads shall be subject to the municipal regulations of the cities of Washington and Georgetown within their several corporate limits.”
Without pausing to examine the effect of the act of June 20, 1874, and other statutes on the subject, we entertain no doubt that these companies were bound by their charters not only to pave once the designated portions of the streets; but to repair the paving and to change the grade and lay new pavements within the prescribed limits whenever the municipality, in its discretion, should see proper to make changes in the streets, rendering such work proper to be done on the part of the companies.
The reported eases fully sustain such a construction. In Pittsburgh and Birmingham R. R. Co. vs. Borough of Birmingham, 51 Penn., 41, the charter required the previous assent of the borough by ordinance before the railroad could occupy its streets, and declared that the company “ shall keep so much of the streets of the city and borough as may be used and occupied by them in perpetual good repair at the proper expense and charge of the said company.”
The ordinance of the borough agreeing that the company should occupy the streets, declared that “ said R. R. Co., in addition to other requirements of their charter shall keep Carson street in perpetual good order and repair, from curb to curb its whole length-, from the time of accepting this ordinance.”
These additional requirements were held by the court of *380 appeals of Pennsylvania to be binding upon the company, although onerous and inconsistent with those prescribed by the charter, which gave no authority to the borough to add any further conditions, but merely requires its previous assent before the railroad could occupy the streets.
But in the present case Congress distinctly required, and the companies as distinctly agreed, that the use and maintenance of the road should be subject to the municipal regulations, which required the renewal of the pavement and change of the grades to conform to the changes in the other part of the street.
2d. Can an action be maintained at law to recover back what the District has been compelled to pay on the default of the companies to perform the work described in the declaration ?
Assuming the obligation to be in force, it would seem too plain for argument that a right of action in some form must exist. For we can scarcely regard as serious the contention of counsel for the roads that the only available remedy in the case of default would be an application for a mandamus to compel the company to do the work ; or the suing out of a scire facias to deprive them of their charters for neglect of their charter obligations.
A municipality that would leave the track of a railroad company refusing to comply with a required change of grade at a dangerous elevation or depression, while it was following an action of mandamus through the different courts on appeal, instead of at once performing its plain duty of making the requisite changes to insure the public safety, would deserve a punishment more severe than the inevitable public censure. It would have no option in such a case but would be forced to perform the omitted work. That the negligent party should be made to repay the expense would be only a scant measure of justice.
We will refer to a few cases in support of of the right of action under such circumstances.
In 45 Penna., 137, Town of Phœnixville v. Phœnixville Iron Co., an action was brought by the town to recover from *381 the company the amount it had expended for the repair of a bridge crossed by the defendant’s railroad and also by foot passengers, which had been built at joint expense, but which the defendant refused to repair. - Judge Strong, speaking for the court which sustained the town’s right to recover, notices that the defendant’s charter authorized them to construct the bridge and cross it with their railroad, but says nothing of repairs ; but he adds : “ It is a fair presumption the legislature never intended to give away public rights or to impose burdens upon any local community without compensation. This is a continuing obligation upon the company to keep up the bridge.”
In Penn. R. R. Co. vs. Duquesne Borough, 46 Penna., 224, the town brought an action to recover back the sum it had expended in rebuilding a bridge across a canal which had been taken by the railroad company under, authority of a law of the State, which declares the company should receive this and the other public wmrks, subject to existing contracts repecting them. The canal had erected the bridge originally, and it was insisted that the railroad, as its successor, was bound to repair and rebuild it.
The court held the action could be maintained, and in their opinion used this language : “ whenever any person or corporation is bound to repair a public highway and refuses to do so, when necessary, on notice by the proper officers, having the general oversight thereof, those officers may repair it and recover the proper expense thereof in an action of assumpsit founded on the duty.”
A case very much like the one before us is reported in 44 Wisconsin Reports, 238, City of Ocato vs. Chicago and Northwestern R. R. Co. By the general statutes a corporation making a railroad is required to restore any street it may pass through, to its former condition and thereafter maintain the same in such condition against any effects thereafter produced by the railroad. Nothing is said in the law as to who should defray the cost of the repairs, nor of any action to recover their cost. The defendant after constructing its road through the city, though requested by the *382 authorities^ neglected to restore the streets and sidewalks to their former condition. The common council, which under the charter had full authority over the streets, procured the necessary repairs to be made and the city paid for them, and it was held it could recover from the railroad company all reasonable expenses so incurred.
3d. The remaining question relates to the form of the declaration, which we must examine under the demurrer to the plea.
There seemed to exist some uncertainty in the minds of the counsel as to the precise nature of the declaration. The first plea of the defendant, which is nil debet, seems to have assumed the action to be debt, to which that plea is the general issue, while it is not applicable to an actiozi of assump-sit or on the case. It is also laid down that nil debet is almost the only plea used in debt on statutes, whether qui tam or otherwise. 2 Evans’ Harris, 94.
¥e think a recovery in the present case should be sought in an action of assumpsit founded upon the statutory obligations of the charter.
This form of action seems more appropriate than debt, because the latter lies for a sum certain, whereas the recovery here should be for such reasonable sum, to be ascertained by a jury, as the work, done was really worth. Although the companies are alleged to have neglected to perform their duty in the premises, this would not authorize a recovery against them for the actual sum paid by the District, if the jury should think this was an extravagant amount, which the officers recklessly expended in the work, without reference to its true value. As in the case cited from 44 Wisconsin, the recovery should be limited to reasonable expenses incurred by the city. The jury in that case rejected one of the items of the account claimed by the city as not a proper .charge against the said railroad company under the circumstances.
The case in 46 Penna., was in assumpsit founded on the duty arising out of the statutory obligation of the railroad company to keep up the canal bridge.
*383 In Ott vs. Chapline, 3 H. & McH., 323, an action of assumpsit was sustained, brought by a collector, who having taxes to collect from the defendant omitted to levy them, and having paid the amount over to the .public brought his action for money paid at the defendant’s request.
In the same volume, at page 4, is to be found the very instructive case of Gash vs. Taylor. The plaintiff, the sheriff of Harford county, had paid into the State treasury, in settling his accounts, the amount of the treble tax required to be paid by the defendant as a non-juror for tlie years 1777-78-79 ¿ and in 1790 he brought an action of assumpsit in the general court to recover back the amount thus paid. The defendant asked an instruction that there could be no recovery, notwithstanding the payment, unless it was'shown that the payment was at the instance and request of the defendant-This prayer was refused by the court, and the plaintiff recovered.
It is worthy of remark here, that although the claim in that case was long out of date and based upon a claim of treble taxes created by a law made only for the exigency of the war, long since closed, the plea of the statute of limitations "was not interposed.
In Mayor, &c., of Baltimore vs. Howard, 6 H. & J., 383, the city brought assumpsit to recover a sum of money due for paving taxes imposed by the city on the defendant. It was held, the action would lie, whether the act authorizing the tax gave a particular remedy or none, upon the principle that where a law gives a claim to one against another, it raises an implied assumpsit or legal obligation to pay ■, and that where a remedy by distress or action of debt is plainly given, it is only cumulative, and does not take away the action arising by implication, on the legal obligation to pay a claim created by law.
So in Dugan vs. Margave, 1 Gill & Johnson, 499, the court sustained the right to recover in assumpsit for taxes levied under the city charter, and which the collector had lost the right to collect by distress, by his neglect in giving the notice required by law. “ The imposition and assessment of a tax *384 by the Mayor, &c., in pursuance of the charter, creates a legal obligation to pay such tax, on which the law raises an implied assumpsit by the person taxed.”
The tax in this case was levied in 1817, and the case was tried in the appellate court. It was argued by able counsel for the defendant, but the statute was not pleaded.
And in Clemens vs. Mayor, &c., of Baltimore, 16 Md., 259; it. was held that a claim for paving taxes assessed under a statute, might be recovered in an action of assumpsit.
The declaration in its present form, must be held to be in debt, and should be changed to assumpsit. It should also charge that the sums paid and now sought to be recovered back were what the work was reasonably worth ; and it should set forth the other sections of the charter which require the companies to conform their track to the grade of the street, and should refer to the provision that the road shall be subject to the municipal regulations.
Demurrers of plaintiff to defendants’ second and third pleas sustained, with leave to the plaintiff to amend its declaration.